RALPH C. HOLMES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 85096. Promulgated May 17, 1938.

*Robert J. Heberle, Esq.*, for the petitioner.
*C. R. Marshall, Esq.*, for the respondent.

OPINION.

BLACK: The question in this proceeding is whether the expenditures totaling $30,577.01 were ordinary and necessary business expenses as petitioner contends, or personal expenses as respondent contends. The former are deductible; the latter are not. The pertinent sections of the Revenue Act of 1932 are as follows:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *.

SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

(1) Personal, living, or family expenses * * *.

Congress has provided three prerequisites, each one of which must be met before any item of expense is deductible from gross income under section 23 (a) of the Revenue Act of 1932. The item in question must be an "ordinary and necessary expense"; it must be "paid or incurred during the taxable year"; and it must be so paid or incurred "in carrying on any trade or business" of the taxpayer. If any one of these prerequisites is absent, the item in question is not deductible.

The respondent concedes that the expenditures totaling $30,577.01 meet the second prerequisite of the statute. He contends, however, that the first and third prerequisites are absent.

We shall consider first whether petitioner paid the expenses in question "in carrying on any trade or business * * *." Petitioner paid the expenses from his personal funds while he was a stockholder and director of the Texas Corporation, but after he was no longer an executive officer of the corporation. Petitioner contends however that the expenditures were so closely related to his services as an executive officer of the corporation as to make them deductible from the salary which he received from it, even though they were incurred and paid after his resignation. Petitioner emphasizes the fact that he continued to be a stockholder and director in the corporation throughout the remainder of the year.

During the time that petitioner was the president and chief executive officer of the Texas Corporation, including part of the taxable year involved here, was he engaged in any trade or business? Respondent contends that he was not. We think he was. During the several years that petitioner served as president and chief executive officer of the Texas Corporation his salary ranged from $50,000 to $100,000 per annum. We think these earnings were from a business carried on by petitioner, to wit, the business of being chief executive of an oil corporation. This view is supported by our decision in *Peoples-Pittsburgh Trust Co. et al., Executors*, 21 B. T. A. 588. In that case, Herbert Du Puy, during 1917 and 1918, was chairman of the board of directors of the Crucible Steel Co. of America and during those years he devoted his time and attention almost exclusively to the affairs of the corporation. On these facts we held that the business of Herbert Du Puy during 1917 and 1918 was that of being the executive head of the Crucible Steel Co. of America and its subsidiaries and that his expenses incurred in defending an action growing out of acts done while he was acting as chief executive of the steel company were deductible as ordinary and necessary business expenses. Our decision in that case was affirmed in *Commissioner v. Peoples-Pittsburgh Trust Co.*, 60 Fed. (2d) 187. The court, in affirming the Board, said:

* * * The taxpayer's business consisted in the performance of the duties devolving upon him as the executive head of the Crucible Steel Company and its subsidiaries. Though he was acting for the steel company and was doing only that which he was required to do, as its official, in the preparation and signing of the tax returns, he was, nevertheless, conducting his own business. When, therefore, he was faced with criminal charges, and was compelled to pay out large sums of money for attorney's fees and other expenses of the trial, he paid what was necessarily incurred by reason of carrying on his own business, viz., that of acting as chief executive officer of the steel company.

*Mrs. A. B. Hurt et al., Executors*, 30 B. T. A. 653, was a similar case, in which we followed *Peoples-Pittsburgh Trust Co., supra*.

The effect of respondent's contention on this point is that the *Peoples-Pittsburgh Trust Co.* case is no longer authority because of the Supreme Court's decision in *Burnet* v. *Clark*, 287 U. S. 410, and *Dalton* v. *Bowers*, 287 U. S. 404. It is plain that the Board has not agreed with this contention because *Mrs. A. B. Hurt et al., Executors, supra*, was decided by the Board subsequent to the Supreme Court's decisions in the *Dalton* v. *Bowers* and *Burnet* v. *Clark* cases. In fact, in the *Hurt* case we cited the two above named Supreme Court cases in support of our decision on the second point therein, which was that a loss sustained by the decedent in 1921 by reason of the worthlessness of shares of stock in a corporation of which he was the majority stockholder and director did not constitute a "net loss" under the statute, and could not be carried forward and used as a deduction from gross income in computing the taxpayer's net income for the following year. The language of the Supreme Court in *Burnet* v. *Clark*, upon which respondent evidently relies in support of his contention, is as follows:

> The respondent was employed as an officer of the corporation; the business which he conducted for it was not his own. There were other stockholders. And in no sense can the corporation be regarded as his alter ego, or agent. He treated it as a separate entity for taxation; made his own personal return; and claimed losses through dealings with it. He was not regularly engaged in indorsing notes, or buying and selling corporate securities. The unfortunate indorsements were no part of his ordinary business, but occasional transactions intended to preserve the value of his investment in capital shares.

Following the reasoning of the Supreme Court quoted above, we agree entirely that the business of the Texas Corporation in the instant case was not the business of petitioner; that the corporation was in no sense his alter ego; and that business expenses or losses of the corporation would in no sense be the business expenses or losses of the petitioner. Nevertheless to so hold we do not think means that we have to hold that petitioner himself was not, at least up until the time of his resignation in May 1933, engaged in carrying on a trade or business, to wit, that of being chief executive officer of an oil corporation, for which he received large amounts of compensation. We do not believe that the Supreme Court's decision in *Burnet* v. *Clark* and *Dalton* v. *Bowers* should be read as going so far as the Commissioner contends. Petitioner had been with the Texas Corporation for many years and had worked his way up to the position of its chief executive officer. So far as the record shows his duties and responsibilities in that position occupied his time, attention, and labor, and the purpose thereof was a livelihood or profit. Cf. *Flint* v. *Stone Tracy Co.*, 220 U. S. 107. And to say that petitioner during

these years that he was acting as the chief executive officer of the Texas Corporation had "no trade or business" within the meaning of the applicable statute because the Supreme Court has said in the *Dalton* and *Clark* cases that the business of a corporation is not the business of its chief executive officer, is extending the meaning of the Supreme Court decisions too far. It may well be that deductible "ordinary and necessary expenses in carrying on a trade or business" would be few and far between for a taxpayer engaged in carrying on a business as executive officer of a corporation. The most of such deductions that we can think of would be those allowable only to the corporation. However, there are some which would be allowable as deductions to the individual, if he pays them out of his own personal funds, such for example as those involved and allowed in the *Peoples-Pittsburgh Trust Co.* case and the *Hurt* case. So, as we view it, petitioner, while an executive officer of the Texas Corporation, was engaged in "carrying on a trade or business" as that term is used in section 23 (a) of the Revenue Act of 1932. Having thus decided, we have still another inquiry which must be answered. Were the expenditures totaling $30,577.01, expended representing amounts paid by petitioner for postage, printing, clerk hire, office expense, et cetera, in acquainting stockholders of the Texas Corporation with the facts which brought about petitioner's severance from the corporation as its chief executive officer and seeking to arouse them to what petitioner conceived to be appropriate action, ordinary and necessary expenses incurred and paid in carrying on petitioner's trade or business as an executive officer of the corporation? We think this question must be answered in the negative.

Petitioner was not engaged in carrying on the business of executive officer of the corporation after he resigned. As pointed out by the court in *Hutchings* v. *Burnet*, 58 Fed. (2d) 514, the phrase "carrying on a trade or business" as used in the revenue statutes bears a more restricted meaning than the general definition of what constitutes business transactions. These expenditures made after May 1933 by petitioner were not for acts which were integrally a part of and proximately resulting from his business as an executive of the corporation.

There was no action for accounting brought against petitioner, either by the corporation or its stockholders. Cf. *Kornhauser* v. *United States*, 276 U. S. 145. The petitioner was not being sued by the corporation or anyone and he was not required to defend himself against any action or indictment. As a matter of fact, no complaint was ever brought or filed officially against him by the corporation or any of its stockholders. Cf. *Mrs. A. B. Hurt et al., Executors, supra; Peoples-Pittsburgh Trust Co. et al., Executors, supra; Citron-Byer Co.*, 21 B. T. A. 308.

Petitioner's statement in his income tax return that "this expense was incurred in an effort to reestablish himself in his former position as such executive by presenting all of the facts to the stockholders" is not borne out by the evidence. Petitioner's own literature which he mailed out to the stockholders made it plain that the issue was not whether petitioner should be reinstated.

Therefore, for reasons stated above, we hold that the expenditures in question were not incurred and paid in carrying on petitioner's business, engaged in for part of the year 1933, of being an executive officer of the Texas Corporation.

But, says the petitioner, even though it be held that the expenses in question were not incurred and paid while carrying on his business as an executive officer of the Texas Corporation, nevertheless the expenses were incurred while he was a director and stockholder of the corporation and are therefore deductible as ordinary and necessary business expenses on that ground. The fact that one is a mere stockholder in a corporation does not constitute the "carrying on of a trade or business" within the meaning of the statute. Cf. *Dalton* v. *Bowers, supra; Burnet* v. *Clark, supra.* What effect on the situation does the fact have that petitioner was a director of the corporation? We have no information as to what salary or compensation petitioner received for his services as director of the corporation, but, for present purposes, we shall assume that he did receive some compensation for such services. Assuming, without deciding, that to be a director in a corporation where compensation is received for one's services constitutes carrying on a trade or business so as to make expenses which are properly attributable thereto deductible, such for example as traveling expenses of an out of town director, not reimbursed to him, we do not think such expenses as we have here in the instant case would be "ordinary and necessary expenses" of carrying on such trade or business.

The expenses, under the circumstances narrated in our findings, would be extraordinary we think for a director to pay out of his own personal funds. Cf. *Welch* v. *Helvering*, 290 U. S. 111. Therefore, assuming, without deciding, that to be a director in a corporation where compensation or fees are paid for such services is itself "carrying on a trade or business", we hold that the expenditures in question were extraordinary in their character for a director to pay and are not shown to be ordinary and necessary expenses incurred and paid in carrying on such business of being a director, if it be a business.

Reviewed by the Board.

*Decision will be entered for respondent.*