A. Augustus Low v. Commissioner.Low v. CommissionerDocket No. 2190.United States Tax Court1944 Tax Ct. Memo LEXIS 139; 3 T.C.M. (CCH) 859; T.C.M. (RIA) 44277; August 11, 1944*139 J. Theodore Cross, Esq., 185 Genesee St., Utica, N. Y., for the petitioner. Laurence F. Casey, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined a deficiency in income tax for the year 1940 in the amount of $723.56. Petitioner does not contest certain adjustments. The questions presented by the pleadings are whether club and membership dues paid by petitioner are deductible as business expenses under section 23(a)(1)(A) of the Internal Revenue Code, as amended, and whether traveling, telephone and incidental expenses of petitioner and his wife are deductible, as either business expenses or non-business expenses under section 23(a)(2) of the Code, as amended. Petitioner and his wife filed a joint return for the taxable year with the collector for the twenty-first district of New York. Issue 1 Findings of Fact The petitioner and his wife, Vahdah Gara Low, have maintained an apartment in New York City since 1936. During 1940, they lived at 275 Park Avenue. During the taxable year, petitioner was one of 11 vice-presidents of the Consolidated Edison Company of New York and was an officer in several of that corporation's*140 affiliated companies. He usually spent five days a week at his office, which was located at 4 Irving Place, New York City. As a vice-president of the Consolidated Edison Company, petitioner is in charge of industrial relations, personnel, and the medical bureau. Also, he has considerable to do with public relations. His compensation from the affiliated companies of the Consolidated Edison system during the taxable year was in excess of $30,000. Petitioner paid membership dues to certain organizations during the taxable year in the total sum of $40.75. He deducted that amount on his return as expense of carrying on business. Respondent disallowed the deduction. The above sum represents dues to the following organizations: Brooklyn Edison Post of American Legion, $10; Kiwanis Club of Brooklyn, $25; Stanley Steves Post of American Legion, $3.25; William Covey Post of American Legion, $2.50. Employees of the Brooklyn Edison Company, and affiliated companies comprise the membership of the Brooklyn Edison Post of the American Legion. Petitioner is not the personnel director of Consolidated Edison but he is the superior officer of said director. Petitioner does not employ or interview *141 employees. That function is carried out by the personnel department. Petitioner comes in contact with many of the company's employees. Petitioner was not required or requested to join the Brooklyn Edison Post by the corporation which employed him, and it did not pay his membership dues, or reimburse him. Petitioner joined the Post voluntarily because he considered it good policy to do so. Petitioner joined the Kiwanis Club of Brooklyn voluntarily, because he was asked by the club to join to represent the utility business. He attended luncheon meetings occasionally. Petitioner was not required or requested to join the Kiwanis Club by his employer, and it did not pay his dues or reimburse him. The Steves Post and Covey Post of the American Legion are located near Sabattis, New York. The Hitchins Corporation is a family corporation of which petitioner is an officer and a stockholder. It is located near Sabattis. Petitioner considers Sabattis his legal residence and files his income tax return in the district which includes that place. Petitioner maintained membership in both above named Posts to make local contacts, to meet his neighbors, and to contribute to the local goodwill. The*142 Hitchins Corporation did not require him to join these Posts and it did not pay his dues or reimburse him. Petitioner was not required by his company, under the terms of employment, or otherwise, to maintain membership in the Brooklyn Edison Post or the Kiwanis Club. The memberships did not serve to increase petitioner's income nor were they cost of earning income. The dues for membership in these clubs were not ordinary and necessary business expenses. Petitioner's membership in the Legion Posts, Stanley Steves and William Covey, had no relation to any business of petitioner, and the dues were not a cost of earning any income. Dues paid to these Posts were not an ordinary and necessary business expense. Opinion Petitioner claims the deduction of $40.75 as business expense under section 23(a)(1)(A) of the Internal Revenue Code, as amended by section 121 of the Revenue Act of 1942. The burden upon petitioner is to prove that the dues for membership in each club are both ordinary and necessary and that they are expenses incurred in carrying on a trade or business. Welch v. Helvering, 290 U.S. 111. It appears to be petitioner's contention that he, *143 as an officer of certain corporations, has paid the expenses for membership in clubs in carrying out his duties. For failure of proof, the deduction for dues in the Steves and Covey Posts of the American Legion is denied. Petitioner has failed to show that the expense was ordinary and necessary in his business. There is very little evidence to support the claim, and petitioner has not overcome respondent's determination, which is, in effect that these were personal expenses. Petitioner states that the membership in the Kiwanis Club was not for his social enjoyment. That may be true. The membership may have given him personal satisfaction, however. The membership in this club was not required by the corporations which employed petitioner. He joined voluntarily. He attended the Kiwanis Club meetings infrequently. Petitioner has failed to show that this membership was necessary in the performance of any business of his own. Petitioner has offered almost no evidence to support his claim for a deduction of the Kiwanis Club dues. Cf. Louis S. Cohn Co., 12 B.T.A. 1281; Johnson v. United States, 45 Fed. Supp. 377. It cannot *144 be assumed that membership in a Kiwanis Club has no personal aspect or that it is a necessary affiliation in the pursuit of business duties. Petitioner receives a fixed salary for his services. It is necessary for him to show that he was required to maintain a club membership of the type in question by his employer. If he was required by the corporations employing him to maintain the membership, then the dues are a necessary expense in earning salary. If the membership advances the corporation's business but not petitioner's business, the dues are not deductible by petitioner. See S.M. 4291, C.B. IV-2 p. 48. What has been stated above applies equally to the membership in the Brooklyn Edison Post. Membership in that Post may have served the business interests of the Consolidated Edison system, but it has not been shown that it served any separate business interest of petitioner, and it has not been shown that petitioner was required by the corporation to belong. The evident goodwill of the petitioner in belonging is not enough to meet the statutory requirements. Petitioner, in his brief, says that membership in all of these clubs was "expected" by the corporations of which petitioner*145 was an officer. There is no evidence to support that statement. Respondent's disallowance of deductions for club dues is sustained. Issue 2 Findings of Fact The Hitchins Corporation was incorporated under the name of the Bog River Power Company under the laws of the State of New York as a real estate holding company in January 1931 to facilitate the settling of the estates of petitioner's parents. In 1938, the name was changed to Hitchins Corporation. The corporation is the owner of a tract of about 9,000 acres of land located in the counties of Hamilton and St. Lawrence in the State of New York. It maintains and operates two water storage reservoirs on its lands where it impounds water of the Bog River. This water is usually sold to hydroelectric plants on the Raquette River. There were two such sales of water in 1940. It also operates two hydroelectric generating plants and a Diesel electric generating plant on its property, producing electricity for its own use and for sale to three or four neighbors and the American Legion Home and its convalescent hospital at Tupper Lake, New York. Timber is standing on the property. The corporation endeavors to preserve the timber and*146 the water-shed. The corporation also maintains a fire patrol during the dry season and maintains the roads over the company's property. During the taxable year, petitioner was president and treasurer of the corporation and was in complete charge of its operations. His wife, Vahdah Gara Low, was assistant-treasurer and assistant-secretary of the corporation. During the taxable year, the Hitchins Corporation had 11,960 shares of stock outstanding. Petitioner owned 1,833 shares; his wife owned 2,040 shares; petitioner and his brother, as trustees for another brother, owned 2,530 shares; petitioner's sister, Mrs. Marion L. Raymond, owned 2,901 shares; and petitioner's brother, Seth Low, owned 2,656 shares. The gross receipts, cost of operations, gross profits and net losses as shown on the tax returns of Hitchins Corporation from 1934 through 1940 are as follows: FiscalNet LossesYearGrossCost ofGrossshownEndingReceiptsOperationsProfitson Returns3-31-34$14,060.32$12,129.87$1,930.45$2,051.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,797.8210,973.732,824.092,484.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,129.0213,589.292,539.732,504.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,797.199,570.198,227.001,901.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,018.9714,585.811,566.84 (Loss)6,769.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,156.2212,107.485,048.74326.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,232.9211,765.04467.886,050.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,566.8811,147.665,419.221,099.32*147 For the fiscal year ending in 1941, the cost of operations, $11,147.66, comprised wages, $4,484.94, and miscellaneous costs, $6,662.72. Petitioner and his wife have never received any salary or monetary compensation from the corporation, and the above figure is for wages for employees, a superintendent and a cook. The above sum for miscellaneous costs includes food supplies, $2,300; freight and telephone expense, $967; and auto expense, $300. The gross receipts of $16,566.88 for the fiscal year ending in 1941, represent the receipt of about $15,000 from the sale of impounded water, and $1,500 from the sale of electric energy. During the taxable year, the corporation employed five persons, on an average, excluding petitioner. The corporation has not sold any timber or real estate during the period from 1933 to 1944. There is a comfortable, frame house of fourteen rooms on the property owned by the corporation. There are nine bedrooms, three of which are occupied by employees of the corporation. The house is kept open all year. Petitioner keeps personal belongings at this house and visits it frequently. He entertains his friends there. He regards this place as his home, and the *148 New York apartment as "temporary" quarters. Petitioner votes in Hamilton County, where Sabattis is located. He maintains that Sabattis is his legal residence. During 1940, petitioner spent about 85 days at the Hitchins property, usually over week-ends, and Mrs. Low spent 118 days there. The books and records of the corporation are kept under petitioner's direction. He directs the work to be done on the property. A record is kept of all meals served and the names of persons who take meals at the house on the Hitchins property. The up-keep and operation of the property involves keeping roads in repair, keeping the gates to the water-storage reservoir in operating condition, maintaining supplies of food, materials, and fuel, releasing water for sale, keeping the two hydroelectric plants in operation, and keeping culverts in repair. The superintendent employed by the corporation has been there since 1936. Prior to 1931 he worked for the corporation, also. The Hitchins property is distant from towns. Sabattis is a railway station three miles away. It is for the convenience of the corporation to provide meals and lodging for the employees, free of charge, and it is necessary to make such*149 provisions to keep employees there. Certain food-stuffs are grown on the property, including hogs, potatoes, and vegetables. The pork is processed and the vegetables are canned. Mrs. Low raises some of the vegetables, planting and caring for them. She canned vegetables and attended to the curing of pork. She supervises the running of the house when she is there. Petitioner and Mrs. Low do not reimburse the Hitchins Corporation for their lodging or meals. During 1940, petitioner's meals at the property totalled 257, and Mrs. Low's meals totalled 355. But petitioner reimburses the corporation for meals served to his guests who numbered 94 during 1940, receiving 994 meals. Petitioner expended $134.50 for charges for about 82 telephone calls to the Hitchins property from New York during 1940. All of the calls were made by him. He has not been reimbursed by the Hitchins Corporation for this expense. The above amount includes $13.50 for tax on telephone calls. * Petitioner deducted $134.50 in his return as business expense. Respondent disallowed the deduction. Petitioner made 28 separate round trips by train from New York City to Sabattis during*150 1940. The trips usually were over week-ends. Excepting four trips, the trips were made leaving New York City on Thursday, Friday or Saturday. No trips were made in April. Petitioner spent some time at the Hitchins property during the eleven remaining months of the year. Of the 85 days which petitioner spent at the Hitchins property during 1940, he spent there 13 days in May, 12 days in August, 10 days in September, 8 days in October, and 21 days in November. He took his regular vacation from his New York office during November. He spent on these trips $494.85 on train fares; $147 for Pullman charges; $196 for miscellaneous charges, including taxi, tips, and meals; total $837.85. During 1940, Mrs. Low made 12 separate round trips from New York City to Sabattis. On each trip she accompanied the petitioner. She spent some time at the Hitchins property in every month of the year. Of the 118 days which she spent there, she was there 13 days in May, 21 days in August, 17 days in September, 16 days in October, and 28 days in November. Petitioner paid her travel expenses as follows: $214.40 for train fares; $50.40 for Pullman charges; and $54 for miscellaneous charges; total, $318.80. The*151 total sum expended by petitioner during 1940 for his and his wife's travel costs to the Hitchins property was $1,156.65, which amount was deducted in the joint return of petitioner and his wife as a business expense. Repondent disallowed deduction. Petitioner has not been reimbursed by the Hitchins Corporation for these expenditures. During 1940, petitioner went from New York City to Albany, making five round trips, for the purpose of seeing the New York State Superintendent of Public Works about the construction of a State road from the main highway to Sabattis and the Hitchins property. A new road would facilitate travel to the property. Mrs. Low did not go on these trips. Petitioner spent on these trips, $42.75 for train fares; $8 for Pullman charges; $25 for hotel accommodations, and $60 for miscellaneous expense; total $135.75. He deducted that sum in his return as business expense, and respondent disallowed the deduction. Petitioner has not been reimbursed by the Hitchins Corporation for these expenses. The Central Adirondack Association is a Chamber of Commerce organization which has for its main purpose promoting the central Adirondack region so as to attract people to that*152 locality. During 1940, petitioner was an officer of the Association, serving as either president or chairman of the board of directors. During 1940, the Association held meetings at towns near Sabattis. Two meetings were held at Racquette Lake, which is 90 miles distant, and one meeting was held at Inlet, which is 116 miles distant. Petitioner drove by automobile to attend these meetings. At the meetings he entertained members and officers of the association. The members of the Association are engaged in businesses in the area, but none of those whom petitioner entertained were or had been customers of Hitchins Corporation. Petitioner spent for these three trips, $21.90 for gasoline and oil; $10 for hotel; and $55 for miscellaneous expenses, consisting chiefly of charges for meals and refreshments for guests; total $86.90. Petitioner has never been reimbursed by the Hitchins Corporation for these expenditures. Petitioner deducted $86.90 on his return as business expense. Respondent disallowed the deduction. The Hitchins Corporation has never paid dividends to its stockholders. According to the balance sheet in the return of the corporation for the fiscal year ending March 31, 1941, *153 and as of that date, the corporation's assets were $263,358.81, consisting of an inventory of water stored, $10,000, and capital assets - real estate, power plants and dams, diesel system, and equipment - of $247,712.08. It had a small amount of cash, and accounts receivable of $5,603.96. On the liability side, there are shown, among other items, accounts payable, $3,711.11; notes payable, $10,000; subscriptions to capital stock not yet issued, $14,460; and "earned surplus and undivided profits" of $224,811.54. The kind of business of the corporation is described on the return as real estate holding company, incorporated to facilitate setting the estate of Marian Low. Since its organization, there has been an account on the books of the corporation between it and petitioner. Petitioner advanced cash to the corporation, from time to time, some of which was repaid to him. He was charged on the account for meals for guests, and for "miscellaneous charges" which are not explained. He charged the account of the corporation for various expenditures which he made for the corporation called "miscellaneous charges". He subscribed for stock at various times. When the corporation was indebted*154 to him, he would take stock in payment of the indebtedness. The total amount expended by petitioner in 1940 for telephone calls, travel expense, and entertainment expense, as set forth above, was $1,513.80. Petitioner did not charge the corporation for these expenditures in any way. He did not charge them against the corporation in the running account with the corporation, although he charged the corporation for certain miscellaneous items in 1940. As officers of Hitchins Corporation, petitioner and his wife were not engaged in a business in executing their duties. The expenses for travel and entertainment of the petitioner incurred by his attendance at three meetings of the Central Adirondack Association were not business expenses to him or of the Hitchins Corporation, but they were petitioner's personal expenses. The telephone call charges, plus tax, were paid by petitioner out of his own funds. The expense of the telephone calls to Sabattis from New York, if made in connection with the business of Hitchins Corporation, and to the extent that they were, were business expenses of the corporation. The travel expenses of petitioner and of Mrs. Low, if necessary and if incurred*155 in connection with the business or for the benefit of Hitchins Corporation, were business expenses of the corporation. Substantially all of such travel expenses of petitioner and Mrs. Low were personal expenses. The expenses of travel by petitioner to Albany, New York, were for the benefit of Hitchins Corporation, and, if they were business expenses, they were for the benefit of the corporation. The total expenditures, in the sum of $1,513.80, were not ordinary and necessary expenses incurred for the production and collection of income or for the management, conservation, or maintenance of property held for the production of income. Opinion There are several types of expenditures for which petitioner claims deduction as either ordinary and necessary business expense, under section 23(a)(1)(A), or as non-business expense under section 23(a)(2). Petitioner contends, first, that all of the expenditures are deductible as business expenses on the theory that he and his wife incurred the expenses in the performance of their duties as officers of the Hitchins Corporation, and that being officers of the corporation was the carrying on of a business of their own. Petitioner cites Stephen Hexter, 47 B.T.A. 483;*156 Marjorie Fleming Lloyd-Smith, 40 B.T.A. 214, aff'd. 116 Fed. (2d) 642; certiorari denied, 313 U.S. 588; and Ralph C. Holmes, 37 B.T.A. 865. Respondent contends that the expenditures were personal and, therefore, not deductible under section 23(a)(1)(A). He asserts, further, that if, for purposes of argument only, it is assumed that the expenditures in question were made in connection with the business of the Hitchins Corporation, such expenditures, when made by stockholders, can only represent loans or contributions to capital. Respondent cites Hal E. Roach, 20 B.T.A. 919; Mastin v. Commissioner, 28 Fed. (2d) 748, and Kenan v. Bowers, 48 Fed. (2d) 263. Our first consideration is of the contention that the expenditures are deductible as ordinary and necessary business expenses under section 23(a)(1)(A). The first inquiry is whether petitioner and his wife, by virtue of being officers of Hitchines Corporation, were engaged in a business of carrying out their duties. Petitioner*157 and his wife filed joint returns. It appears that each of them is claiming part of certain expenses, the travel expenses to Sabbatis, in connection with carrying on such business. To answer this first question in the affirmative, if we could, would not be helpful in determining the question of deductibility, for the nature of the expenses - telephone charges and travel costs - would make them the expenses of the corporation, rather than of these two officers and stockholders, assuming the telephone charges and travel expenses were incurred in connection with the business of the corporation. We need only point out that in Ralph C. Holmes, supra, and Mrs. A. B. Hurt, et al., Executors, 30 B.T.A. 653, the expenditures were made for legal fees incurred by a director of a corporation as a defendant in a suit instituted against him, and for costs incurred by a former president of a corporation in efforts to inform stockholders about a dispute within the company. In the Holmes case, the taxpayer had been receiving a salary of over $50,000 a year. In this case, petitioner and his wife do not receive salaries from the Hitchins*158 Corporation. In the above cases it was concluded that the taxpayer's business was that of being an officer of a corporation, so that he had a business in which the expenses in question could be said to be business expenses. In the Holmes case, at p. 873, a statement was made, however, to indicate that the concept of "business expenses" of such type of "business" was narrow. The following is said: It may well be that deductible "ordinary and necessary expenses in carrying on a trade or business" would be few and far between for a taxpayer engaged in carrying on a business as an executive officer of a corporation. The most of such deductions that we think of would be those allowable only to the corporation. What is the nature of the expenses in question? They are telephone charges and travel expenses. The travel expenses are of three types, from New York to Sabattis, from New York to Albany, and from Sabattis to Racquette Lake and Inlet. The telephone calls are said to have been made by petitioner to give directions to the superintendent about work on the property or to receive information from him. Such expenses are clearly expenses of the corporation and are not in the class*159 of the type expenditures involved in the Holmes and Hurt cases, and in other cases cited in both of those cases. The travel expenses to Albany, that travel having to do with the possible construction of a state road to the Hitchins property, is likewise an expense of the corporation. The result of such expenditures would be to benefit the property of the corporation. All of the travel expenses of petitioner and his wife to Sabattis were not, in our opinion, connected with the corporate business. It is clear that some of the trips were for the personal enjoyment petitioner and his wife, despite petitioner's of petitioner and his wife, despite petitioner's denial that such is true. During 1940, they had 94 guests, who stayed 331 guest days and received 994 meals. Petitioner testified that he spent his vacation at the Sabattis property. He was there 21 days in November. Most of the trips were taken on weekends. It is possible that petitioner took guests on every trip he made to the Hitchins house in 1940, judging from the number of guests. Assuming that petitioner devoted some of his time on each trip to the business of the corporation, what was the proportion? How are we to*160 allocate the Sabattis travel expense between the personal activities and enjoyment of petitioner and his wife, and the work they may have done for the corporation? Petitioner has not given us any means of making such allocation. But, even if we could allocate some of this travel expense to "business" affairs, we would have to hold that the amount of the expenses so allocated was expense of the corporation and not of petitioner or his wife. The travel expense of the wife has a special aspect. Petitioner testified that the corporation needed food-stuffs because it had to provide meals for its employees. Assuming, arguendo, that Mrs. Low's trips were for the sole purpose of working in the vegetable garden, her efforts would be in the nature of performing labor for the corporation for which she would be entitled to receive compensation of some sort. As she received none, the expense of travel, at least, would be an expense of the corporation, deductible by it, but not by petitioner's wife. We are not willing to assume that Mrs. Low's services in raising vegetables for the corporation were necessary to the corporation. The corporation had employees who presumably could have done *161 this work, and perhaps they did some of it. Mrs. Low did not testify. There is room for inquiring if Mrs. Low's activities were in the nature of a hobby and recreation, for gardening is frequently a pursuit of recreation for those who have a fondness for the earth and its fruits And so, if it could be found as a fact that some of the expenditures in question, those above referred to, were in connection with the corporation's business, by some allocation, (see George M. Cohan v. Commissioner, 39 Fed. (2d) 540, 544), we could not sustain petitioner's contention that such expense is a business expense to him or is deductible by him. This case is distinguishable from the cases cited by petitioner. It falls, rather, under the rules that a corporation is a distinct entity, separate from its stockholders; and that one taxpayer cannot take another taxpayer's deductions. Hal E. Roach, supra.The facts have been given careful consideration. The Hitchins Corporation had income above expenses in the fiscal year ending in 1941 of $5,419. If some of the expenses in question were bona fide business expenses made on behalf of the*162 corporation, it is difficult to understand why petitioner did not charge the corporation on the running account the corporation had with him. During 1940, he did charge the corporation for some expenditures he made for it. There is, at least, an element of inconsistency in his not having charged the corporation for the expenses in question, if they were in fact made for the benefit of the corporation. Petitioner was in complete charge of the corporation. He could have obtained reimbursement for his expenditures. That petitioner did not charge the expenses to the corporation may have been because either he considered the expenses personal, or he was aware of the fact that the corporation would receive less tax benefit than he would from expense deductions. Our holdings, based upon the facts are: (1) Petitioner and his wife did not carry on a "business" by virtue of being officers of Hitchins Corporation, from which they did not receive any salaries. (2) The travel expense to Albany was an expense of the corporation. It cannot be deducted by petitioner. (3) Some minor part of the telephone and travel expense of petitioner was a business expense of the corporation, but it cannot be *163 deducted by petitioner. (4) Petitioner has failed to prove that the travel expense of Mrs. Low was, even in part, a necessary expense of the corporation, but if some part was, it is not deductible by Mrs. Low in the joint return, since it would be deductible only by the corporation. There is one further holding to be made with respect to the telephone and travel expense from New York to Sabattis, which first is explained. The evidence in its entirety does not convince us that the telephone and travel expenses to Sabattis were chiefly "business" expenses, and were not chiefly personal expenses. The burden of proof is upon petitioner. He attempted to meet that burden, but we think, unsuccessfully. The Hitchins property was simple. It was a large, wooded tract of mountain property. Although water was sold, the dams were opened only twice a year. Although some electric power was sold, the amount was small. The superintendent who was employed had been working on the place since 1936. We agree with respondent that petitioner has failed to prove that the management of Hitchins Corporation by himself necessitated the amount of the telephone and travel expense in question, or that the amount*164 of activity at Hitchins was so great that most of it could not be taken care of by the superintendent. Accordingly, it is held that substantially all of the expenses of telephone calls, excluding tax thereon, and of the travel expenses of petitioner and his wife to Sabattis were personal expenses. There is a lack of convincing evidence to overcome respondent's determination. Petitioner is, however, entitled to deduct $13.50, the amount of the tax on the telephone calls to Sabattis. * See section 3465 of the Internal Revenue Code. There was a Federal tax on telephone service in effect during 1940, imposed upon the person paying for the service. The tax is deductible from the income of that person. C.B. 1942-1, p. 69. Petitioner makes a further argument with respect to the expenses of petitioner, only, for travel, only between Sabattis and New York, contending that the expense was for travel away from home in the pursuit of business. Petitioner cites Charles D. Coburn v. Commissioner, 138 Fed. (2d) 763. Petitioner, in this argument, contends that Sabattis was petitioner's "home" and he had to travel away from*165 there in the pursuit of business, when in New York City. The case cited is distinguishable. This argument is without merit, and accordingly, it is not considered. See Walter M. Priddy, 43 B.T.A. 18. The expenses of the trips to the meetings of the Central Adirondack Association were clearly personal expenses of petitioner. He was an officer of that Association. Part of the expense was for entertainment of guests, none of whom had any business dealings with petitioner or Hitchins Corporation, as far as the record shows. The corporation was a member of the Association, but the evidence shows no connection between the business of the corporation and petitioner's attendance at the meetings. Even if the evidence did show such connection, the corporation would be the taxpayer to make claim for deduction for the expense. We must reject, also, petitioner's alternative argument, that all of the above items totalling $1,513.80, were non-business expenses, deductible under section 23(a)(2). Such expenses, to be deductible, must be ordinary and necessary expenses incurred for the production and collection of income, or for the management, conservation, or maintenance*166 of property held for the production of income. The reasons for rejecting this argument are the same as has been set forth above. All of the expenses were not "ordinary and necessary", and were not for the statutory purposes, under our view of the evidence, because a substantial part was personal. Assuming that some part was ordinary and necessary for management of the Hitchins Corporation, petitioner has not shown what the portion was or that it could not have been paid by the corporation. The expenses, if business expenses at all, were expenses of the corporation. See Regulations 111, section 29.23(a)-15; and Bowers v. Lumpkin, 140 Fed. (2d) 927. Respondent has filed a written motion requesting leave to file an amended answer to make the pleadings conform to the proof. This motion was filed after the hearing. At the close of the hearing, respondent made the motion orally. The proposed amendments to the answer allege that the meals and lodging furnished during 1940 to petitioner and his wife constitute compensation for services, and that the alleged fair value of the meals, $220.32, and the alleged fair value of the lodging, $204, should be added to*167 the income under the joint return. Respondent makes claim for an increase in the deficiency in the amount of $158.70. The motion has been denied because it is untimely. It raised a new issue at the conclusion of the trial which, consequently, was not tried. Petitioner had no opportunity to meet the issue during the trial. The value of board and lodging furnished to an employee solely for the employer's convenience is not taxable to the employee. Arthur Benaglia, 36 B.T.A. 838. See Regulations 111, section 29.22(a)-3. If this issue were raised by the pleadings, it would be important to petitioner to show that the above rule applied to petitioner and his wife. It would be necessary also to prove the fair value of the meals and lodging. Petitioner has objected to the motion as untimely, and we sustain his objection. In Simms v. Andrew, 118 Fed. (2d) 803, it was pointed out that the right to amend pleadings to conform to the proof proceeds upon the theory that by such amendment the pleadings are brought in line with the actual issues upon which the case was tried, even though such issues were not stated in the pleadings as*168 originally drawn. The court then stated that this rule does not authorize such an amendment merely because evidence which is competent and material upon the issues created by the pleadings incidently tends to prove another fact not within the issues in the case. Here the only issues which petitioner had prepared to meet were those involving the deductibility of club dues and traveling and telephone expenses. The question of additional income to petitioner because of meals and lodging furnished by the Hitchins Corporation was not an issue and petitioner did not have a fair opportunity to meet such issue. The discretion of this Court may not be exercised to permit one party to proceed unless the other has been given a fair opportunity to meet the issue. Cf. California Brewing Association, 43 B.T.A. 721. Decision will be entered under Rule 50. *Footnotes*. See Dec. 14,117 (M) for correction.↩*. See Dec. 14,117 (M) for correction.↩*. See Dec. 14,117 (M) for correction.↩