Charles W. Nichols and Adelaide B. Nichols v. Commissioner.
Nichols v. Commissioner
Docket No. 83396.
United States Tax Court
T.C. Memo 1963-148; 1963 Tax Ct. Memo LEXIS 194; 22 T.C.M. (CCH) 698; T.C.M. (RIA) 63148; May 29, 1963
Jerome Kamerman, 11 W. 42nd St., New York, N. Y., for the petitioners. Joseph Wilkes for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax of petitioners for the years *195 1955 and 1956 in the amounts of $30,881.19 and $20,640, respectively. The sole issue for decision is whether petitioner Charles W. Nichols is entitled to deductions of $44,000 claimed in his returns for each of the years 1955 and 1956 for "business promotional expenses." Findings of Fact Some of the facts have been stipulated, and, as stipulated, are incorporated herein by reference. Petitioners, husband and wife, filed joint income tax returns for the years 1955 and 1956 with the director of internal revenue for the Lower Manhattan District, New York, New York. Petitioner Adelaide B. Nichols is deceased. Petitioner Charles W. Nichols will hereinafter be referred to as petitioner. During the years 1955 and 1956, petitioner was a stockholder and director of six corporations. In petitioners' income tax returns they reported the receipt of director's fees in the amounts of $6,116 in 1955 and $4,011 in 1956. Petitioner and his wife owned 120,000 shares of the stock of the Allied Chemical Corporation, the value of which was approximately $10,000,000. In his income tax returns petitioner reported the receipt of dividends from this corporation in the amount of $240,150 in 1955 *196 and $251,250 in 1956. In addition to being one of its directors, he was a member of its finance and stock-option committees which met about four times each year. He received no salary from the Allied Chemical Corporation. In the early part of 1955, and prior there-to, the Sintering Machinery Corporation was engaged in the manufacture of equipment used in the production of lightweight aggregates. It factory was at Netcong, New Jersey. Petitioner was a director and held the title of president of this corporation, but did not receive a salary and did not participate in the day-to-day operations of its business. However, he was frequently consulted by its chief executive officer, Adolph F. Leitner, on policy matters both at his office in New York and at his home in West Orange, New Jersey. Early in 1955, he went to Cleveland with Leitner to negotiate the sale of Sintering Machinery Corporation to McDowell Company, Inc., and on February 11, 1955, the assets of Sintering were sold to McDowell Company, Inc. Prior to this sale petitioner owned a majority of the shares of Sintering, the value of which was approximately $150,000. In March or April 1955, Leitner and a representative of the *197 McDowell Company, Inc. went to Palm Beach, Florida, and held some meetings with petitioner, who was there at that time, in connection with the transfer of the business of Sintering to the McDowell Company. The Coxhead Company in 1955 and 1956 was engaged in the manufacture of a machine known as the Varityper. Petitioner was a member of its board of directors and was familiar with its business. In 1955 and 1956, he owned about 10 percent of its stock, and he and his wife and daughter owned a majority of its outstanding shares. In 1955, the corporation, which had been "running downhill" for four years, was losing money. During the five-month period, August to December 1955, Adolph F. Leither, at petitioner's request, made a study of its operations and conferred regularly with petitioner about them. Petitioner personally paid Leitner for these services. Late in 1955, petitioner, with the backing of the stockholders, acquired control of the company. In January 1956 Leitner became its chief executive officer and it paid him a salary for services rendered in that capacity. In 1955, after petitioner acquired control of the Coxhead Company, he and his wife traveled to Europe. They were *198 there for about one month, and spent approximately two weeks on vacation trips in the Scandinavian countries. Petitioner's purpose in going to Europe was to make an investigation to determine why the sales by the Coxhead Company of the Varityper in those countries were not as large as he thought they should be. He hoped that this would result in an improvement in its sales from which he would benefit as a stockholder. While in Europe he conferred with agents of the company, entertained them, and was entertained by them. His investigation disclosed that the typestyles available in those countries were too limited and adversely affected the normal growth of sales of the Varityper. Upon his return, he discussed the results of his investigation with Leitner. Petitioner was not an employee of the Coxhead Company. It did not "send" him to Europe and did not reimburse him for any part of the expenses incurred on the European trip. In the latter part of 1956, the Coxhead Company was merged with the Addressograph-Multigraph Company. Prior to the merger petitioner made a trip to Cleveland and was "active in working out that merger". During the years 1955 and 1956 petitioner owned 7,900 shares *199 of the stock of Nichols Engineering & Research Corporation (hereinafter referred to as Nerco), which had a value of approximately $1,000,000. Nerco was engaged in metallurgy and sanitation. A large part of its business involved the incineration of garbage and rubbish and the drying or incineration of sewage sludge. Petitioner was its president, but received no salary. He was also a member, and chairman of its board of directors. Its offices were at 70 Pine Street, New York City. One of these offices was used by petitioner and another adjoining office by his secretary whose salary was paid by him. Nerco paid the rent for those offices. Petitioner paid for postage, stationery and other office supplies used by him. During the years 1955 and 1956, petitioner's home was in West Orange, New Jersey. It had about 16 rooms, a recreation room, and a swimming pool. Meetings were sometimes held at his home during these years at which officers, directors, or members of committees of Allied Chemical, Nerco, or the Coxhead Company were present. At these meetings, held in the afternoon, matters involving the organization of these corporations or the operation of their businesses were discussed. *200 During each of these years petitioner entertained at his home for a full day some 40 or 50 persons associated with Allied Chemical Corporation, and the entire engineering and office staff of Nerco and their families. He also entertained there in behalf of Nerco members of the American Public Works Association, an organization of municipal officials and consulting engineers. Petitioner spent some time in Palm Beach, Florida, during the months of February and March 1956. During that period he wrote two or three letters a week to Nerco relating to policy and financial matters, and several letters to Leitner relating to the business of the Coxhead Company. He also communicated with his office occasionally by phone. While he was in Florida he went with an officer of Nerco to see two garbage incinerator plants erected by Nerco for the cities of Coral Gables and Fort Lauderdale, Florida. In each of the joint Federal income tax returns filed by petitioners for the years 1955 and 1956, they claimed a deduction of $44,000 for "Business Promotional Expenses". Approximately $10,000 to $15,000 of the $44,000 claimed for each year related to expenses claimed to have been incurred by petitioner *201 at his home. Petitioners' tax return for the year 1955 was examined by an internal revenue agent, and the report of that examination was mailed to petitioners about April 24, 1957. Petitioners assented to the assessment of an additional tax shown in that report and paid the assessment. Petitioners' tax return for the year 1956 was examined by an internal revenue agent, and the report of that examination was mailed to petitioners about July 22, 1958. Petitioners assented to the assessment of an additional tax shown in that report and paid the additional assessment. Petitioner's records were kept by his secretary. They consisted principally of cancelled checks, bills, appointment diaries, and a record of petitioner's investments. At the time of the examination of petitioner's returns for 1955 and 1956 petitioner's secretary gave these records to petitioner's accountant and he submitted them to the revenue agents for examination. After each examination the records were delivered to petitioner's accountant and he returned them to petitioner's secretary. Sometime prior to 1961, she destroyed or otherwise disposed of some or all of petitioner's records and none of them were offered *202 in evidence at the trial. In determining the deficiencies for the years 1955 and 1956, the respondent disallowed the deduction of $44,000 claimed for business promotional expenses in petitioners' returns for each of these years. The explanation of this disallowance in the statement attached to the notice of deficiency reads as follows: In your returns for each of the years 1955 and 1956 you include in your miscellaneous deductions the amount of $44,000.00 for business promotional expenses. It is determined that you have not substantiated this amount in either year, nor have you shown that it represents ordinary and necessary business expenses in accordance with Section 162 of the Internal Revenue Code of 1954, or that it represents expenses incurred for production of income in accordance with Sections 212(1) or 212(2) of the Internal Revenue Code of 1954. Of this amount, $17,000.00 was disallowed and agreed to by you for 1955 and $20,000.00 was disallowed and agreed to by you for 1956 as shown in Revenue Agents' Reports dated April 24, 1957 and July 22, 1958, respectively. Opinion RAUM, Judge: Petitioner's ownership of stock in *203 the various corporations involved and his uncompensated activities in their behalf cannot furnish a basis for the deduction of the expenditures herein as "business" expenses under Section 162(a) of the 1954 Code. If there had previously been any doubt on this score it has been removed by the recent decision in A. J. Whipple v. Commissioner, U.S. . Nor is there any ground for allowance of the claimed $44,000 annual deductions by reason of petitioner's activities as a director. His fees as a director were in the aggregate amounts of $6,116 and $4,011 for 1955 and 1956, respectively. We find it impossible to believe that the alleged expenditures were made in order to protect such fees. To the contrary, to the extent that the expenditures were proximately related to the corporate enterprises under consideration, we are satisfied that they were incurred to protect petitioner's large investments in those corporations and that the director's fees, in the context of this case, were wholly incidental. Moreover, even to the extent that these expenditures might in some measure relate to petitioner's activities as a director they would be extraordinary in character in that respect and could *204 not qualify as "ordinary and necessary" expenses under the statute. Ralph C. Holmes, 37 B.T.A. 865, 874. Petitioner makes an alternative contention that he should be allowed some deduction under Section 212(2) for expenses incurred in behalf of the Coxhead Company in 1955 and 1956. These expenses seem to have consisted primarily of the salary he paid Leitner in 1955 to make a study of the business of Coxhead which was then operating at a loss; the amount he expended on the trip to Europe in the latter part of 1955 to improve or promote the export business of Coxhead; and the amount he expended in the latter part of 1956 in traveling to Cleveland in connection with the merger of Coxhead and Addressoraph-Multigraph Company. Petitioner urges that these expenditures qualify for deductibility under Section 212(2) as ordinary and necessary expenses incurred by him for the conservation of property held for the production of income. We disagree. The expenditures were made for the benefit of Coxhead and, to the extent deductible at all, would have been deductible by it had it reimbursed petitioner for them. They do not qualify for deduction by petitioner because they are not *205 expenses which a stockholder of a corporation "engaged in conserving and enhancing his estate would ordinarily incur". Deputy v. Dupont, 308 U.S. 488, 496; Low v. Nunan, 154 F. 2d 261, 264 (C.A. 2); Jacob M. Kaplan, 21 T.C. 134, 146; Harry Kahn, 26 T.C. 273, 275. In view of the foregoing, we do not reach the question whether petitioner has proved that he actually made expenditures in the full amount of $44,000 during each of the years, nor do we have occasion to apply the so-called Cohan rule. Decision will be entered for the respondent.