DAVID J. PRIMUTH AND CAROL J. PRIMUTH, PETITIONERS *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3954–68.   Filed March 2, 1970.

*William F. Kolbe*, for the petitioners.
*Alan B. Shidler*, for the respondent.

## OPINION

The petitioner seeks to deduct a fee of $3,016.43 which he paid in 1966 to Frederick Chusid & Co. for its services in securing new employment for him. We have found as a fact that Chusid at the outset virtually guaranteed him a new position and that their efforts did, in fact, result in his accepting a new position.

Section 162 (a) of the Code reads in part as follows:

SEC. 162. TRADE OR BUSINESS EXPENSES

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

We hold initially that the above-noted expenditure of $3,016.43 was incurred by the petitioner in carrying on his trade or business of being a corporate executive.

Over the years we have held on more than one occasion that a taxpayer may be in the trade or business of being an employee, such as a corporate executive or manager, *Harold A. Chistensen*, 17 T.C. 1456 (1952), *Benjamin Abraham*, 9 T.C. 222 (1947), *Ralph C. Holmes*, 37 B.T.A. 865 (1938), and *Peoples-Pittsburgh Trust Co.*, 21 B.T.A. 588 (1930), affd. 60 F. 2d 187 (C.A. 3, 1932). To the same effect are *Hochschild* v. *Commissioner*, 161 F. 2d 817 (C.A. 2, 1947), reversing on other grounds 7 T.C. 81 (1946), *Schmidlapp* v. *Commissioner*, 96 F. 2d 680 (C.A. 2, 1938), modifying a Memorandum Opinion of this

Court, and *Daily Journal Co.* v. *Commissioner*, 135 F. 2d 689 (C.A. 9, 1943), reversing a Memorandum Opinion of this Court.

The recent decision in *Mitchell* v. *United States*, 408 F. 2d 435 (Ct. Cl. 1969), which supports our holding, deserves special mention because its facts are of particular interest. There the taxpayer had taken as an ordinary deduction large amounts of legal fees which he had incurred in defending himself against an action which grew out of his earlier role as chief executive officer and major stockholder of a corporation. At the time the action was commenced he was president of another corporation and was advised that if the action against him was sustained he would be forced to resign. His reputation as a corporate officer was consequently at stake. With this background the court found that the taxpayer's "primary trade or business has always been that of being a corporate official," and that therefore the fees were deductible as a business expense.

The fact that the petitioner was employed at the time the fee was paid, which resulted in his securing new employment, is of no moment. We held in *Harold Haft*, 40 T.C. 2, 6 (1963), that a costume jewelry salesman who had worked as an employee for some 25 years "did not cease to be in the costume jewelry business" simply because he was temporarily unemployed and had no merchandise to sell. Consequently, he was entitled to deduct certain business expenses even though he had no offsetting income during the entire year in question.

A comparable result was reached in *Furner* v. *Commissioner*, 393 F. 2d 292 (C.A. 7, 1968), reversing 47 T.C. 165 (1966), where the Seventh Circuit held that a professional teacher, who took a year off to secure a master's degree, was still carrying on a trade or business with the result that the cost of her courses taken during that year off was deductible. Cf. *Ditmars* v. *Commissioner*, 302 F. 2d 481 (C.A. 2, 1962), reversing a Memorandum Opinion of this Court.

The obvious principle to be evolved from the *Furner* and *Haft* cases is that it is possible for an employee to retain, at least temporarily, his status of carrying on his own trade or business independent of receiving any compensation from a particular employer. This being so, it certainly cannot be held against the petitioner that, while actively and gainfully carrying on his trade or business of being a corporate executive, he incurred an expense with a view to receiving his paychecks from a different employer than the one for whom he was working at the time of payment.

Admittedly all the foregoing cases involved an expense which was incurred with respect, and related to, the employee's current or former employment and do not involve the payment of an employment fee. However, this does not serve to distinguish the principle at issue in

those cases from the one before us. In 1966 petitioner was an executive of one company. He desired to change his employment and to become an executive of another company. To accomplish this purpose he employed Chusid and paid them a fee in 1966. Chusid found him to be a qualified executive and sought other suitable employment for him. They were successful with the result that on Friday, May 12, 1967, petitioner ceased being an executive of one company and on Monday, May 15, 1967, became an executive of another company.

Once we have made our decision that the petitioner was carrying on a trade or business of being a corporate executive, the problem presented here virtually dissolves for it is difficult to think of a purer business expense than one incurred to permit such an individual to continue to carry on that very trade or business—albeit with a different corporate employer. There can be no question that the fee paid in 1966 resulted directly in petitioner's securing new employment in 1967. There can be no doubt concerning its proximity.

Furthermore, the expense had no personal overtones, led to no position requiring greater or different qualifications than the one given up, and did not result in the acquisition of any asset as that term has been used in our income tax laws. It was expended for the narrowest and most limited purpose. It was an expense which must be deemed ordinary and necessary from every realistic point of view in today's marketplace where corporate executives change employers with a noticeable degree of frequency. We have said before, and we say again, that the business expenses which an employee can incur in his own business are rare indeed.[4] Virtually all his expenses will be incurred on behalf of, and in furtherance of, his corporate employer's business. What we have here, however, is an exception to that rule.

Our holding with respect to the precise issue presented herein was foreshadowed by our comments in *Eugene A. Carter*, 51 T.C. 932, 935 (1969), wherein we said the following with respect to a particular ruling of the respondent to be noted in a moment:

However, we think this language was not intended to permit the deduction of a fee where the employment agency merely seeks to locate a position for the taxpayer, as here, but was intended to allow a deduction *only where the agency actually obtains a position for the taxpayer*. In the latter circumstances, it may be reasoned, the expense (frequently paid from the wages earned from the new employment) *relates to and is incurred in connection with the taxpayer's business of carrying on the new employment*. [Footnote omitted. Emphasis supplied.]

---

[4] In *Ralph C. Holmes*, 37 B.T.A. 865, 873, the following statement is made:
"It may well be that deductible 'ordinary and necessary expenses in carrying on a trade or business' would be few and far between for a taxpayer engaged in carrying on a business as executive officer of a corporation. The most of such deductions that we can think of would be those allowable only to the corporation. * * *"

Interestingly enough one might have thought that our decision would be in keeping with the views of respondent. To amplify, on April 25, 1960, respondent published Rev. Rul. 60–158, 1960–1 C.B. 140, which reads in part: "Accordingly, it is held that expenditures incurred by an individual in seeking employment, including fees paid to an employment agency, are not allowable deductions for Federal income tax purposes." A short time later, on June 6, 1960, respondent revoked this ruling in Rev. Rul. 60–223, 1960–1 C.B. 57, which states in entirety:

Revenue Ruling 60–158, page 140, this Bulletin, which holds that expenses incurred in seeking employment, including fees paid to an employment agency, are not deductible for Federal income tax purposes, is revoked. This ruling would have been effective for taxable years beginning after December 31, 1959.

The Internal Revenue Service will continue to allow deductions for fees paid to employment agencies for securing employment.

It was this ruling to which we had reference in the *Carter* case.

Respondent seeks to avoid the effect of the plain language contained in the last sentence of his own Rev. Rul. 60–223 on two grounds. First, he contends that Chusid was not an employment agency noting in support thereof that it was not so registered under Illinois law. Whether Chusid can be classified within the technical definition, whatever that might be, of an employment agency is irrelevant. What is relevant is the fact that Chusid did all any third party can do to secure employment for the petitioner, and its efforts proved successful.

Secondly, respondent contends that his revenue ruling is not applicable because it only covers the situation where the payment of the fee is contingent upon the securing of a position and not the situation where, as is true here, the fee is payable in all events. In the case where the payment of a fee does in fact result in the securing of a job this seems to us to be a distinction without a difference. In both cases the purpose of the payment, and the results thereof, are identical. Furthermore, we noted in our Findings of Fact that a representative of Chusid practically guaranteed the petitioner, on the occasion of their first interview, that they would secure a job for him.

Admittedly this decision was not reached without some conceptual difficulties. It might be argued that the payment of an employment fee is capital in nature and hence not currently deductible. Presumably, under this view the fee would be deductible when the related employment is terminated. However, the difficulty with this view is to conjure up a capital asset which had been purchased. Certainly, the expense was not related to the purchase or sale of a capital asset. Further, we do not find the instant situation analogous to the capital expense incurred by an individual in the course of changing his field of endeavor.

A further objection can be made on the basis that the expenditure is

basically personal in nature, analogous perhaps to general educational expenses. However, here we have an expense which was paid for the *limited* purpose of securing employment at a particular time and whose direct relationship to the obtaining of said employment cannot be questioned. There was no element in incurring the expense of qualifying for a new trade or business or better preparing oneself to take advantage of any number of unknown opportunities or of making life more enjoyable generally. Nor is it analogous to commuting expenses which are dependent in extent upon one's own convenience in choosing a personal residence. An employment fee by its very nature bears no relationship to a personal expense but instead bears a direct relationship to the receipt of income. Personal expenses should be limited to those which are not acquisitive in character from an income-producing point of view.

Our holding herein makes it unnecessary for us to consider the applicability of section 212 (1) which authorizes the deduction of expenses paid "for the production * * * of income." The literal language of the statute would surely seem to apply and the fee was certainly "expended in the pursuit of income," to use the language of H. Rept. No. 2333, 77th Cong., 2d Sess., p. 46, which accompanied the progenitor of section 212 (1). See also *Caruso* v. *United States*, 236 F. Supp. 88 (1964). However, we are concerned by the language of the Supreme Court in *McDonald* v. *Commissioner*, 323 U.S. 57 (1944), which seems to limit section 212 (1) to serving as an offset to nonbusiness income. We are further troubled by the statutory scheme for the computation of a net operating loss deduction under section 172 which seems to prohibit the offsetting in the first instance of a section 212 (1) deduction against salary. Income Tax Regs., sec. 1.172–3 (a) (3).

Reviewed by the Court.

*Decision will be entered for the petitioner.*

TANNENWALD, *J.*, concurring: I am in full agreement with the result reached by my colleagues in the majority and with much of the reasoning in Judge Sterrett's careful and lucid analysis and his apparent rejection of the subtle distinctions which seem to be developing in this area. To me, the drawing of distinctions based upon the difference between "seeking" and "securing" employment, upon whether the fee of the employment agency is contingent or payable in any event, or upon whether the agency's efforts are successful or unsuccessful simply adds unnecessary confusion and complexity to a tax law which already defies understanding even by sophisticated taxpayers. I would similarly reject any attempt to import a capitalization of expenditure concept into a situation such as is involved herein. That concept has

generally been confined to cases of acquisition of tangible assets or intangible assets, such as a license or goodwill of a going business, or preparation for engaging in a new field of endeavor. Compare *Morton Frank*, 20 T.C. 511 (1953) (prospective acquisition of newspaper businesses); *Manhattan Co. of Virginia, Inc.*, 50 T.C. 78 (1968) (goodwill); *Arthur E. Ryman, Jr.*, 51 T.C. 799 (1969) (admission to the bar of a second State); *Nathanial A. Denman*, 48 T.C. 439 (1967) (preparation for a new field of endeavor). By way of contrast, current deductibility has normally been permitted for advertising expenditures and for educational expenditures to improve one's skills utilized in existing employment, even though there were indications that some general benefit would in all probability last beyond the year of expenditure. E.g., *Consolidated Apparel Co.*, 17 T.C. 1570, 1582 (1952), affirmed in part and reversed in part on other issues 207 F. 2d 580 (C.A. 7, 1953) (advertising expenses); *Cosimo A. Carlucci*, 37 T.C. 695, 701 (1962) (educational expenses). Compare *Harold Haft*, 40 T.C. 2 (1963).

Certainly, in the ordinary affairs of life, common understanding would clearly encompass the fee paid to the employment agency herein as "ordinary and necessary expenses in carrying on any trade or business" (sec. 162) within the "usual, ordinary and everyday meaning of the term." See *Old Colony R. Co.* v. *Commissioner*, 284 U.S. 552, 561 (1932). I think that the judicial interpretation of the term should be the same. "Common understanding and experience are the touchstones of the revenue laws." See *Helvering* v. *Horst*, 311 U.S. 112, 117–118 (1940).

In cases of the instant type, I would adopt the simple test of comparing the position which the taxpayer occupied before and after the change. Perhaps the categorization of corporate executive will not always be applicable, but, in this case, petitioner was at all times a *financial* corporate executive. By any reasonable standard of application, he ought to prevail.

I am not concerned that such a test will open up a Pandora's box of unjustified deductions. The courts are not wanting in capability of separating the wheat from the chaff and, at the same time, exhibiting sufficient flexibility not to proliferate taxpayers' difficulties unnecessarily. Such a task is simply a normal attribute of judicial life.

FORRESTER, FAY, and DAWSON, *JJ.*, agree with this concurring opinion.

———

SIMPSON, *J.*, concurring: Although I agree with the conclusion of the majority in this case, I do not wish to be understood as approving our decision in *Eugene A. Carter*, 51 T.C. 932 (1969), or approving

Rev. Rul. 60–223, 1960–1 C.B. 57, if the intent of such ruling is to deny a deduction for the expenses of seeking employment. In my opinion, there is no legal basis for denying a deduction for the expenses of seeking a new position in the same trade or business.

In our society, it is common practice for an employee to move from one position to another in the same trade or business for a variety of reasons. If an individual wishes to change his position in his trade or business, it is surely appropriate for him to secure the assistance of an employment agency in finding a new position. Hence, any fee that he pays to the agency meets the test of being an ordinary and necessary expense of his trade or business. *Cosimo A. Carlucci*, 37 T.C. 695 (1962). Business expenses need not lead to profit to be deductible. Sec. 1.162–1, Income Tax Regs. Therefore, it would be a novel rule to disallow a deduction merely because the expense does not lead to a new position. The ordinary test is merely whether there is a bona fide expectation that the expense will lead to profit. *L. W. Brooks, Jr.*, 50 T.C. 927, 932–933 (1968). Under this test, many expenditures in unsuccessful causes have nonetheless been allowed as deductions. *Doggett* v. *Burnet*, 65 F. 2d 191 (C.A.D.C. 1933). I see no reason to exclude from the application of this rule expenses incurred in seeking employment. Accordingly, I disagree with our decision in *Carter*.

The position of the respondent is not altogether clear. On the one hand, his regulations under section 212 provide that expenses incurred in seeking employment are not deductible. Sec. 1.212–1(f), Income Tax Regs. On the other hand, he has long held by ruling that fees paid to secure employment are deductible. O.D. 579, 3 C.B. 130 (1920); Rev. Rul. 60–223, *supra*. Additional confusion results from Rev. Rul. 60–223, which may be reasonably interpreted as allowing the deduction of all expenses incurred in seeking employment.

Whatever the respondent's intended position may be, there is, in my opinion, no sufficient legal basis for treating the expenses of securing employment differently from those of seeking employment. The arguments sometimes given for denying a deduction for the expenses of seeking an employment include the contention that the employee is not engaged in the new trade or business at the time he incurred the expenses, the contention that such expenses are personal or capital in nature, and the contention that to allow such expenses as a deduction would lead to numerous administrative problems. Yet, these same arguments apply with equal force to the expenses of securing a new position. To allow deductions for securing employment and

deny deductions for seeking employment seems unreasonable and arbitrary.

TANNENWALD, J., agrees with this concurring opinion.

———

FEATHERSTON, J., concurring: I agree with the conclusion reached by the majority, but I would decide the case on a narrower ground.

Exercising the authority conferred by section 7805(a) to prescribe "all needful rules and regulations," the Commissioner issued Rev. Rul. 60–223, 1960–1 C.B. 57, stating that "The Internal Revenue Service will continue to allow deductions for fees paid to employment agencies for securing employment." The Court has found that petitioner paid the fee to Chusid for securing employment for him. In these circumstances, petitioner is entitled to the benefit of the ruling. I find nothing in the history of the Commissioner's administrative handling of this problem to show that Rev. Rul. 60–223 was intended to be limited to contingent fee situations.

FAY and IRWIN, JJ., agree with this concurring opinion.

———

TIETJENS, J., dissenting: I respectfully dissent. Of course, as the majority points out, the taxpayer was in the business of being a salaried corporate employee. But I would confine that concept much more narrowly than does the majority. I would say the taxpayer was in the business of being an employee of *Foundry* when the claimed deductible expenses were incurred. The expenses, however, were not *related* to his employment by *Foundry* but were paid to obtain a new job with *another* employer. To me this is the same as incurring expenses in locating or finding a new business. Such expenses are not deductible as business expenses because they were not connected with taxpayer's existing employment. See the regulations under section 212 which provide in part as follows:

(f) Among expenditures not allowable, as deductions under section 212 are the following: * * * expenses such as those paid or incurred in seeking employment or in placing oneself in a position to begin rendering personal services for compensation, * * *

And see *McDonald* v. *Commissioner*, 323 U.S. 57, and the hoary case of *Mort L. Bixler*, 5 B.T.A. 1181, where the taxpayer was a salaried fair manager who, when his employment ended at one place or in the event of his resignation, sought a new salaried employment in some other State or municipality and where we denied deduction of his expenses in going from place to place in connection with seeking and changing jobs.

DRENNEN, WITHEY, ATKINS, SCOTT, AND HOYT, JJ., agree with this dissent.