T.C. Summary Opinion 2006-165

UNITED STATES TAX COURT

LAWRENCE K. AND RUTH L. HARRELL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17918-05S.          Filed October 16, 2006.

Ruth L. Harrell, pro se.

<u>Brian A. Pfeifer</u>, for respondent.


        JACOBS, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
at the time the petition was filed.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for the year in issue, and Rule references are to the Tax
Court Rules of Practice and Procedure.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.

Respondent determined a deficiency of $8,866 in petitioners' 2002 Federal income tax. The issues for decision are: (1) The amount of noncash charitable contribution deductions which petitioners are entitled to claim on Schedule A, Itemized Deductions, and; (2) the amount of the excess unreimbursed employee and other miscellaneous expenses deduction[1] to which petitioners are entitled.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing the petition, petitioners resided in Miami, Florida.

Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return, for taxable year 2002, in which they claimed as Schedule A deductions medical and dental expenses, charitable contributions, and excess unreimbursed employee and other miscellaneous expenses. Respondent determined that the amounts claimed for these latter deductions were overstated and accordingly sent petitioners a notice of deficiency. Petitioners timely petitioned this Court. Petitioners concede, and thus no

---

[1]The excess unreimbursed employee and other miscellaneous expenses deduction is a Schedule A deduction. The amount equals the sum of: (1) Unreimbursed employee expenses--job travel, union dues, job education, etc.; (2) tax preparation fees; and (3) other expenses--investment, safe deposit box, etc., less an amount equal to 2 percent (the 2-percent floor) of the taxpayer's adjusted gross income. See sec. 67(a).

longer challenge, respondent's determinations that they are not entitled to the medical and dental expense deduction. However, they continue to challenge respondent's other determinations.

## Discussion

As a general rule, the Commissioner's determinations in the notice of deficiency are presumed correct, and the burden of proving an error is on the taxpayer. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, pursuant to section 7491(a), the burden of proof with respect to any factual issue relating to ascertaining the liability for tax shifts to the Commissioner if the taxpayer: (1) Maintained adequate records; (2) satisfied the substantiation requirements; (3) cooperated with the Commissioner's agents; and (4) during the Court proceeding introduced credible evidence with respect to the factual issue involved. Petitioners did not meet the substantiation requirements or introduce credible evidence regarding the disallowed amounts; therefore, the burden of proof does not shift to respondent.

It is settled law that deductions are a matter of legislative grace, and the taxpayer must prove that he/she is entitled to the claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). With these well-established propositions in mind, we decide whether petitioners have

satisfied their burden of proving entitlement to deduct noncash charitable contributions and excess unreimbursed employee and other miscellaneous expenses in amounts greater than those respondent determined.

As noted, petitioners claimed deductions on their 2002 return for charitable contributions, consisting of $3,200 in cash and $7,753 in noncash contributions.  At trial, the parties stipulated that petitioners were entitled to a deduction of $950 for cash charitable contributions and that the $2,250 balance was improperly claimed because the disallowed portion was made not by petitioners but by their family members.

Respondent disallowed the $7,753 deduction for noncash contributions for lack of substantiation.  At trial, respondent conceded that petitioners are entitled to a deduction for noncash charitable contributions of $1,600.

Section 170 allows a deduction for charitable contributions during the taxable year if verified as provided in the regulations.  Sec. 170(a)(1).  The term "charitable contribution" includes a contribution or gift to a corporation, trust, or community chest, fund, or foundation, with certain provisos.  Sec. 170(c).  For example, the recipient organization must have been "created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United

States". Sec. 170(c)(2)(A). Furthermore, no part of the net earnings of a qualified organization may inure to the benefit of any private shareholder or individual. Sec. 170(c)(2)(C).

The charitable contribution deduction is subject to certain substantiation requirements. Sec. 170(f)(8). No deduction is allowed for any contribution of $250 or more unless the taxpayer substantiates the contribution by a contemporaneous written acknowledgment of the contribution by the qualified donee organization. Sec. 170(f)(8)(A). This written acknowledgment must state the amount of cash and a description (but not necessarily the value) of any property other than cash the taxpayer donated and whether any consideration was given to the taxpayer. Sec. 1.170A-13(f)(2), Income Tax Regs.

Petitioners attached to their 2002 Form 1040 a Form 8283, Noncash Charitable Contributions, listing eight dates on which they claimed to have made noncash donations to charitable organizations. At trial, petitioners presented as evidence receipts that were furnished blank by charitable organizations and admittedly filled in by petitioners. The receipts, which total $6,903, purport to show that petitioners made noncash contributions on seven separate dates during 2002: January 14, March 15, May 14, June 28, August 16, September 30, and November 21. In addition, petitioners submitted a list, which they

prepared, of items allegedly contributed on December 31, with a value of $850,[2] but no receipt for this contribution was produced.

The dates on the receipts for January 14 and September 30 appear to have been altered, and we are not satisfied that those contributions were in fact made during 2002. The list of items with respect to the purported December 31 contribution does not support the section 170 deduction because it was prepared exclusively by petitioners and is therefore not a "contemporaneous written acknowledgment of the contribution by the donee organization".

The remaining five receipts are supported by detailed lists of items that petitioners allegedly contributed, but the values listed for the individual items do not add up to the total amount claimed for each contribution. Additionally, the list of items purportedly contributed on June 28 includes a situp table and weights that were also listed in the receipt prepared for the purported January 14 charitable contribution. And as noted, we are not satisfied that these items in fact were contributed to charity in 2002.

---

[2]We note that the sums listed on the various receipts petitioners produced plus the amount on the list of items they allegedly contributed on Dec. 31 is less than the amount claimed for noncash contributions on their 2002 tax return. Moreover, the values claimed for the individual contributed items listed in the receipts do not total the claimed sum.

When a taxpayer establishes that he/she has incurred deductible expenses but is unable to establish the exact amounts, we can estimate the deductible amounts, but only if the taxpayer presents sufficient evidence to establish a rational basis for making the estimates.  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  In estimating the amount allowable, we bear heavily on the taxpayer whose inexactitude in substantiating the amount of the expense is of his own making.  See Cohan v. Commissioner, supra at 544.  However, without a rational basis for making the estimate, any allowance we made would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957).

Respondent concedes that petitioners made noncash contributions during 2002 but maintains that the value of those contributions did not exceed $1,600.  Considering the record before us, we do not doubt that petitioners made noncash charitable contributions during 2002.  However, they failed to provide reliable evidence to prove that the amount thereof exceeded the $1,600 respondent conceded.  We therefore hold that for 2002 petitioners are entitled to a $2,550 charitable contribution deduction (rather than the claimed $10,953 deduction), comprising $950 for cash contributions and $1,600 for noncash contributions.

We now turn to the amount of the excess unreimbursed employee and other miscellaneous expenses deduction to which petitioners are entitled.  On their return, petitioners claimed a deduction for excess unreimbursed employee and other miscellaneous expenses of $17,600.  After considering the 2-percent floor, petitioners claimed a deduction for excess unreimbursed employee and other miscellaneous expenses of $15,834.  Of this amount, respondent does not dispute that petitioners are entitled to a deduction of $690 for unreimbursed employee expenses--union dues.  The remaining components of the claimed deduction are uniforms ($5,625), supplies and equipment ($3,510), job search expenses ($4,800), telephone expenses ($2,850), and tax preparation fees ($125).  Respondent disallowed the deduction for all of these components.

Section 162(a) allows a deduction for ordinary and necessary business expenses paid or incurred during the taxable year in carrying on any trade or business.  For an expense to be "ordinary" the transaction that gives rise to it must be of a common or frequent occurrence in the type of business involved. Deputy v. du Pont, 308 U.S. 488, 495 (1940).  To be "necessary" an expense must be "appropriate and helpful" to the taxpayer's business.  Welch v. Helvering, supra at 290 U.S. at 113-114.  The performance of services as an employee constitutes a trade or business.  See sec. 1.162-17(a), Income Tax Regs.  The employee

must show the relationship between the expenditures and the employment.  See Evans v. Commissioner, T.C. Memo. 1974-267, affd. 557 F.2d 1095 (5th Cir. 1977).  The taxpayer bears the burden of substantiation.  Hradesky v. Commissioner, 65 T.C. 87, 89 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).  Section 6001 and the regulations promulgated thereunder require taxpayers to maintain records sufficient to permit verification of income and expenses.  As previously noted, the Court may in some circumstances estimate the amount of a deduction to which the taxpayer is otherwise entitled.  Cohan v. Commissioner, supra at 543-544.

Petitioners deducted $5,625 for uniforms for the taxable year and stipulated that the uniforms Mr. Harrell wore were washed and ironed at petitioners' home.  The expense of uniforms is deductible under section 162(a) if:  (1) The uniforms are of a type specifically required as a condition of employment; (2) the uniforms are not adaptable to general usage as ordinary clothing; and (3) the uniforms are not so worn.  See Yeomans v. Commissioner, 30 T.C. 757, 767-769 (1958); Beckey v. Commissioner, T.C. Memo. 1994-514.

Mr. Harrell, in his position with United Parcel Service, was required to work in a clean uniform every day.  Mrs. Harrell washed and ironed Mr. Harrell's work uniforms at home.  The employer provided the uniforms but did not reimburse Mr. Harrell

for the cleaning of his uniforms. Although petitioners would be entitled to a deduction for the cost of washing and ironing the uniforms, they provided no evidence upon which we can estimate the amount thereof. At trial, Mrs. Harrell testified that the amount claimed was a guess that was based on the hypothesis of paying to have the uniforms cleaned commercially. Deductions are based on actual, not hypothetical, costs.

As the uniforms were not sent to a commercial cleaner but were laundered and ironed at home, the amount claimed is not allowable. Moreover, the amount claimed ($468.75 per month) appears grossly inflated. In the absence of a rational basis for estimating the cost of the cleaning of the uniforms, we sustain respondent's disallowance of this component of the claimed unreimbursed employee and other miscellaneous expenses. See Cohan v. Commissioner, supra at 543-544.

Petitioners deducted $3,510 for "supplies and equipment" for the taxable year in issue. Taxpayers carrying supplies on hand can deduct the costs of those supplies to the extent that the supplies are actually consumed or used in operation during the taxable year for which the return is made if the cost of the supplies was not deducted in a previous year. If the supplies are incidental and are carried on hand with no record of consumption kept, the taxpayer may deduct the total cost of such supplies

purchased during the taxable year for which the return was made. Sec. 1.162-3, Income Tax Regs.

Petitioners presented no documentation to support their claimed deduction of $3,510 for supplies and equipment. There is no rational basis in the record on which we can estimate the magnitude of this expense. We therefore sustain respondent's disallowance of this component of the claimed excess unreimbursed employee and other miscellaneous expenses deduction.

Petitioners deducted $4,800 for job search expenses in connection with Mrs. Harrell's efforts to secure employment as well as deducting $2,850 for "telephone cell phone" expense for the taxable year in issue. We consider these two expenses together because they are subject to more stringent substantiation requirements than the other components of the disallowed employee expense deduction.

Job search expenses are deductible under section 162(a) to the extent they are incurred in searching for new employment in the employee's same trade or business. See Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970). However, if the employee is seeking a job in a new trade or business, the expenses are not deductible under section 162(a). See Frank v. Commissioner, 20 T.C. 511, 513-514 (1953). Job search expenses include résumé preparation expenses, postage, and travel and

transportation expenses.  See <u>Murata v. Commissioner</u>, T.C. Memo. 1996-321.

Before the taxable year in issue, Mrs. Harrell was employed as an administrative assistant and during 2002 she was unemployed, searching for employment.  Petitioners' substantiating evidence for the job search expenses consists of:  (1) Correspondence between Mrs. Harrell and potential employers; (2) a "work search form" required by the State of Florida for purposes of administering the State unemployment compensation program;[3] and (3) a mileage log which shows the addresses of companies which Mrs. Harrell visited over the course of the year and the dates of the visits.

The correspondence and work search forms were prepared contemporaneously with the search for employment and establish to our satisfaction that Mrs. Harrell incurred deductible job search expenses.  Hampered by a lack of evidence in the record as to the amount thereof, but recognizing that expenses for a job search were in fact incurred, we place the amount for that portion of her job search expenses consisting of résumé preparation, telefax transmission, and postage at $250.  Mrs. Harrell's remaining job

---

[3]The work search form contains the following language:  Each employer you contact in your search for work must be shown below. It is important to make as many IN PERSON applications as possible during EACH WEEK for which you claim benefits.  Mrs. Harrell certified that the information she provided on the report was correct and complete to the best of her knowledge.

search expenses consisted of the cost of travel in her own automobile to potential employers' places of business. This portion of her job search expenses is supported by the work search record with respect to three interviews and by the mileage log.

In the case of travel expenses, entertainment expenses, and expenses paid or incurred with respect to certain listed property, section 274 overrides the Cohan doctrine, discussed previously, and those expenses are deductible only if the taxpayer meets the stringent substantiation requirements of section 274(d). Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969).

Section 274 contemplates that no deduction may be allowed for expenses incurred for travel on the basis of any approximation or the unsupported testimony of the taxpayer. Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274(d) specifically proscribes deductions for travel expenses in the absence of adequate records or of sufficient evidence corroborating the taxpayer's own statement. At a minimum, the taxpayer must substantiate: (1) The amount of such expense; (2) the time and place such expense was incurred; and (3) the business purpose for which such expense was incurred.

Mrs. Harrell's unemployment compensation work search record constitutes substantiation within the meaning of section 274 with respect to three job interviews that required travel. The record

shows that her round trip travel to those interviews was 28.02 miles per trip, for a total of 84.06 miles. Petitioners did not present receipts for the actual cost of this travel, but we may apply the standard mileage rate to determine the allowable deduction.[4] The standard mileage rate for 2002 was 36.5 cents per mile, so that the total allowable deduction amounted to $30.68.

Unlike the work search record, Mrs. Harrell's travel log was not prepared contemporaneously with the purported travel and appears inaccurate in some respects. The travel log includes entries that do not appear on the work search record that was prepared contemporaneously for unemployment compensation purposes.

The job seeker, in preparing the work search record, is exhorted to document each employer that had been contacted, and those records (certified by Mrs. Harrell) contain only three reports of job interviews. Yet the travel log indicates that she attended eight interviews and traveled on more than 80 occasions, for a total of more than 5,000 miles, to apply for jobs. We find that the travel log is unreliable and does not constitute adequate

---

[4]The standard mileage rate is a matter of administrative convenience by which a taxpayer may compute the amount of deductible automobile expenses using a standard rate rather than separately establishing the amount of an expenditure for travel or transportation. Sec. 1.274-5(j), Income Tax Regs., in part, grants the Commissioner the authority to establish a method under which a taxpayer may use mileage rates to substantiate, for purposes of sec. 274(d), the expense of using a vehicle while traveling away from home. See Rev. Proc. 2001-54, 2001-2 C.B. 530.

substantiation for the claimed deductions for Mrs. Harrell's travel in the course of her job search.

In addition to applying to traveling expenses, the strict substantiation requirements of section 274 apply to deductions with respect to "any listed property (as defined in section 280F(d)(4)." Section 280F(d)(4)(A)(v), in turn, includes "any cellular telephone" in the definition of listed property. The only substantiation petitioners submitted with respect to their cellular telephone expenditures was a letter from Mr. Harrell's employer stating that Mr. Harrell used his cellular telephone to communicate and conduct business with the company and that he was not reimbursed for those charges. No substantiation was introduced as to: (1) Specific telephone calls made using the cellular telephone; (2) the portion of the use that might be related to Mr. Harrell's work (rather than to personal calls); or (3) any other matter that would support a claim that the cellular telephone was property used in Mr. Harrell's trade or business of performing services as an employee. We therefore sustain respondent's disallowance of this component of the claimed excess unreimbursed employee and other miscellaneous expenses deduction.

Finally, petitioners deducted $125 for tax preparation fees. Petitioners used a commercial software package to prepare their 2002 tax return. The record does not reveal the cost of the software package, but we recognize that there in fact was a cost.

We estimate this cost to be $40 and allow a deduction for tax preparation fees in that amount.

Petitioners' adjusted gross income for 2002 was $88,311. As previously noted, see supra note 1, there is a 2-percent floor in calculating the deduction for excess unreimbursed employee and other miscellaneous expenses. Thus, petitioners may deduct only their unreimbursed employee and other miscellaneous expenses that exceed $1,766 (2 percent times $88,311). The amount of the unreimbursed employee and other miscellaneous expenses that we have found are deductible does not exceed that amount.

To reflect the foregoing and concessions by the parties,

Decision will be entered

under Rule 155.