T.C. Summary Opinion 2010-167

UNITED STATES TAX COURT

EDRALIN A. PAGARIGAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15711-09S.          Filed November 2, 2010.

<u>Keith S. Blair</u>, <u>Curtis E. Tatum</u>, Dominic E. Markwordt
(student), and Gerald Loiacano (student), for petitioner.

<u>Jonathan Hauck</u> and <u>Tyler N. Orlowski</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Pursuant to section
7463(b), the decision to be entered is not reviewable by any
other court, and this opinion shall not be treated as precedent
for any other case.  Unless otherwise indicated, subsequent
section references are to the Internal Revenue Code (Code) in

effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes of $2,609 and $8,401, and section 6662(a) accuracy-related penalties of $521.80 and $1,680.20, for 2005 and 2006, respectively. After concessions,[1] the issues for decision are whether petitioner's salary for 2005 and 2006 from the Baltimore County, Maryland, Public Schools (BCPS) is exempt from Federal income tax under the Convention With Respect to Taxes on Income, U.S.-Phil., art. 21, Oct. 1, 1976, 34 U.S.T. 1277 (article 21); (2) whether petitioner is entitled to deduct $726 for a course she completed in 2005 in the Philippines to prepare for her teaching at BCPS; and (3) whether petitioner is liable for the accuracy-related penalties under section 6662(a) for the 2 years at issue.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are

---

[1]Respondent's notice of deficiency determined that petitioner failed to include a $600 State income tax refund and $41 of interest income in her 2006 gross income. Petitioner did not address these issues in her petition or at trial; therefore, the issues are deemed conceded. See Rules 34(b), 149(b). In addition, the parties resolved all matters concerning petitioner's itemized deductions for the 2 years at issue except for one expenditure, $726 for a course in the Philippines.

incorporated herein by this reference. Petitioner resided in Maryland when she filed her petition.

Petitioner is a citizen of the Republic of the Philippines. In 2005 petitioner was married and had three children: twins age 11 and a third child age 6. She received a bachelor's degree in secondary education and a master's degree in science education from Philippine Normal University. She began her teaching career at St. Bridget School and then in 1996 obtained a teaching position at Tarlac College of Agriculture (Tarlac). Thus, petitioner had 12 years of teaching experience when she left the Philippines for the United States in 2005. Her ending annual salary at Tarlac was 180,000 pesos, equivalent to $3,272. Included in this figure are additional benefits that Tarlac provided its teachers, such as an annual bonus equal to 1 month's pay, a clothing allowance, and, depending on circumstances, a productivity incentive bonus, hazard pay, and other monetary benefits.

Petitioner entered the United States on July 29, 2005, arriving in Baltimore to teach for BCPS as part of an international teaching exchange program sponsored by the U.S. Department of State (the State Department). This was the first time she had been to the United States.

Amity Institute (Amity) is a nonprofit organization the State Department approved to operate an exchange teacher program.

The exchange teacher program allows qualified foreign teachers to enter the United States to teach for up to 3 years. Amity does not directly recruit teachers from the Philippines. During 2004 and 2005 Amity worked with Badilla Corp. (Badilla), a business entity from the Philippines, and with Avenida & Associates, Inc. (Avenida), a business entity from the United States. Badilla and Avenida are affiliated entities who worked together to facilitate the placement of qualified Filipino teachers in American schools. Badilla collected background information such as transcripts and résumés from teachers in the Philippines who were interested in the teacher exchange program in the United States. Badilla found its prospective Filipino teachers principally by word of mouth and seminars conducted by its executives. Avenida or Badilla charged placement fees and additional charges to help teaching candidates with, among other tasks, finding employers in the United States. In the United States, Avenida helped school districts find promising teaching candidates by providing access to a database of overseas jobseekers. In late 2004 petitioner attended an orientation session for an exchange teacher program Badilla sponsored, at which time she submitted her application and résumé.

Dr. Donald A. Peccia joined BCPS in October 2004 as the Executive Director of Human Resources, a position he retained through the date of trial. As of the date of trial, Dr. Peccia's

department employed 71 people who were responsible for the recruitment, retention, and rewarding of the school system's 17,000 full-time and thousands of part-time and temporary employees, extended over 170 schools.

To meet a shortfall in teachers, Dr. Peccia initiated the idea of BCPS' recruiting internationally, beginning with a small "pilot-type program" in the Philippines. In a letter dated January 28, 2005, Dr. Peccia contacted Avenida, stating that BCPS would like to hire 12 or more qualified Filipino teachers. From a preselected group of Filipino teachers, BCPS administrators chose the candidates that the school system wanted to interview.

In March 2005 Herman James and Joyce Reier, personnel officers for BCPS, traveled to the Philippines to interview teaching candidates. On March 7, 2005, Mr. James interviewed petitioner. Mr. James and Ms. Reier coordinated with Dr. Peccia, and they agreed to hire 20 teachers from the Philippines. On March 10, 2005, Mr. James provided petitioner with a preliminary BCPS contract for the 2005-2006 school year. Petitioner signed the preliminary contract and dated her signature March 10, 2005. Petitioner "understood" that BCPS would be evaluating her performance throughout the school year. If her performance was satisfactory, BCPS would continue her employment for the following school year.

Generally, foreign teachers who want to teach in the United States may obtain one of two types of visas. One is the H-1B visa for working professionals. The second is the J-1 visa for individuals coming to the United States under a cultural exchange program approved by the State Department. The J-1 visa is more convenient for foreign individuals who are new teachers in the United States because the visa timing coincides with the academic school year in the United States.

Badilla referred petitioner to Amity, who in turn sponsored petitioner's J-1 visa. The State Department authorized Amity to issue Form DS-2019, Certificate of Eligibility for Exchange Visitor (J-1) Status. The form identifies the visitor; identifies the visa sponsor; briefly describes the exchange program, including the start and end dates; identifies the category of exchange; and states the estimated cost of the exchange program. At all relevant times, Gertrude Hermann was Amity's executive director.

Badilla invited petitioner and the other teachers who had received employment offers from BCPS to meet at Badilla's office in the Philippines on June 14, 2005. At the meeting, Badilla provided many completed forms that each teacher needed to sign, including an administrative fee agreement, Amity's exchange teacher program contract, and a Form DS-2019. The length of time listed on the Form DS-2019 was 3 years, the same length as the

exchange teacher program.  Badilla reiterated that BCPS required satisfactory performance to continue employment beyond the first year.  Petitioner signed the forms and returned them to Badilla for processing.

Before leaving the Philippines, petitioner obtained a leave of absence dated June 21, 2005, from her teaching position at Tarlac "for the duration of the program" to teach for BCPS. Petitioner incurred expenses before her departure, including training classes in classroom management and special education, Avienda's fees, and airline tickets.

Petitioner entered the United States on July 29, 2005.  On August 22, 2005, she signed a standard State-issued Provisional Contract for Conditional or Resident Teacher Certificate Holders (BCPS employment contract), effective beginning August 22, 2005. The BCPS employment contract was for 1 year, terminating automatically at the end of the 2005-2006 school year.  During her first month in the United States, petitioner lived in housing in the Baltimore area that BCPS arranged for the Filipino teachers it had recruited.

BCPS assigned petitioner to teach biology and earth science at Chesapeake High School.  After 1 month, because of petitioner's difficulties dealing with high school students, BCPS reassigned petitioner to teach secondary science at General John Stricker Middle School (Stricker).  The principal of Stricker

issued an evaluation dated December 13, 2005, rating petitioner's performance as unsatisfactory.  Petitioner received a letter dated January 27, 2006, from the area assistant superintendent stating that petitioner needed to show major improvement to continue teaching beyond the 2005-2006 school year.

BCPS offered a "Regular Contract" to petitioner that she signed and dated May 30, 2006, granting her continued employment from year to year so long as she met certain conditions.  This is another standard State-issued contract under which after 2 years, if the teacher met all the requirements of the State, including satisfactory performance, then the teacher received tenure.  For the 2006-2007 school year, BCPS assigned petitioner to teach at Cockeysville Middle School.

Working in the United States provided petitioner with a salary that was considerably greater than the salary she earned in the Philippines, which as described supra page 3 was $3,272 including benefits.  Petitioner's starting annual salary at BCPS was $54,449.  With respect to Federal income tax withholding, petitioner did not provide BCPS with Form 8233, Exemption From Withholding on Compensation for Independent (and Certain Dependent) Personal Services of a Nonresident Alien Individual. Consequently, BCPS withheld Federal income tax from petitioner's salary during 2005 and 2006.

Upon the recommendation of her co-Filipino teachers, petitioner engaged a certain U.S. enrolled agent, Fred R. Pacheco, to prepare her 2005 and 2006 Federal income tax returns. She filed Form 1040NR, U.S. Nonresident Alien Income Tax Return, for each of the 2 years. On the returns, petitioner disclosed her salary from BCPS and then reported that the salary was exempt from taxation under article 21.

Petitioner claimed itemized deductions of $1,801 and $22,231 for 2005 and 2006, respectively. The 2005 itemized deductions consisted solely of State income tax withheld. The 2006 itemized deductions consisted of $3,926 in State income tax withheld, $210 in charitable contributions, $18,045 in unreimbursed employee business expenses, and $50 in tax preparation fees. As a result of the income exclusion, income tax withholding, and itemized deductions, petitioner requested refunds of $4,656 and $9,469 for 2005 and 2006, respectively.

Petitioner returned to the Philippines twice: Once from April 6 to April 16, 2006, to visit her family, and a second time from September 30 to October 2, 2006, to bring her children to reside with her in the United States. Petitioner's husband also relocated to the United States, and petitioner gave birth to the couple's fourth child. Under the teacher exchange program, petitioner's family could not join her in the United States until she received a satisfactory evaluation from BCPS. Therefore, the

earliest petitioner's family could join her was at the end of the 2005-2006 school year.

Petitioner resigned from BCPS effective June 13, 2008, writing that the reason was "contract completed".  On the bottom of the resignation form, her supervisor wrote that petitioner's resignation was a "big loss to BCPS".  Petitioner, on her own initiative, obtained an H-1B visa to remain in the United States for 3 more years beginning July 20, 2008, and as of the date of trial, she taught for the Prince George's County, Maryland, Public School System for the 2009-2010 school year.

The Internal Revenue Service (IRS) selected petitioner's 2005 and 2006 Federal income tax returns for examination.  The examining agent sent three questionnaires to petitioner:  Form 8784, Questionnaire - Temporary Living Expenses; Form 9210, Alien Status Questionnaire; and Form 9250, Questionnaire - Tax Treaty Benefits.  Petitioner contacted the IRS regarding the questions on the forms; then she completed the forms, dated her signature October 6, 2008, and returned the forms to the IRS.

The Court received into evidence copies of the three questionnaires that petitioner had completed.  On Form 8784 petitioner wrote that she planned to return to the Philippines in June 2008 or June 2009.[2]  On Form 9210 petitioner wrote that July

---

[2]Petitioner's otherwise legible handwriting made it difficult to conclude whether she wrote 2008 or 2009 on the form.

29, 2005, was her date of initial arrival, that at that time she expected to remain in the United States for 3 years, and that this expectation had not changed.  On Form 9250, petitioner stated that she intended to remain in the United States until 2008.

In the notice of deficiency dated March 26, 2009, the IRS adjusted petitioner's income to include the earnings from BCPS for 2005 and 2006 that petitioner had excluded under article 21. The notice did not disallow the itemized deductions that she claimed for 2005 and 2006.

Petitioner filed her petition contesting respondent's inclusion of her income from BCPS.  Respondent answered, denying for each of the 2 years at issue that petitioner qualified for the income exemption under article 21 and that petitioner was not liable for the accuracy-related penalties.  Respondent's answer did not raise as a new issue the disallowance of petitioner's itemized deductions for 2005 and 2006.

Respondent moved under Rule 121 for partial summary judgment contending that no material fact existed on the issue of whether petitioner's income for the years at issue qualified for exemption under article 21.  Petitioner objected to the granting of the motion.  Respondent's motion stated that one of the remaining issues for trial was "whether petitioner erroneously claimed miscellaneous itemized deductions in tax years 2005 and

2006". Both parties fully briefed the issue of income exemption under article 21. The Court set the motion for hearing at trial. When the case was called for trial, the Court heard the motion. The parties relied on the respective positions they had set forth in their briefs. The Court has denied respondent's motion for partial summary judgment.

Shortly before trial, petitioner filed a motion in limine to exclude the testimony of Dr. Peccia on the grounds of hearsay, lack of personal knowledge, and relevance. Respondent objected to the motion. The Court heard arguments on the motion at trial and took the motion under advisement. The Court has denied petitioner's motion. The case was tried and the Court heard testimony from petitioner, Dr. Peccia, and Ms. Hermann.

In the parties' stipulation of facts, they agreed in effect that with respect to the itemized deductions that petitioner claimed for 2005 and 2006: (1) The notice of deficiency "incorrectly" allowed or mistakenly failed to disallow the $18,045 deduction for unreimbursed employee business expenses for 2006; (2) the $18,045 deduction is still at issue; and (3) petitioner is entitled to deduct all the other itemized deductions that she claimed for each year at issue. At trial respondent's counsel mentioned itemized deductions in his opening statement, stating that "as for itemized deductions, respondent has conceded those deductions for which receipts and the business

purpose have been provided." During direct examination, petitioner's counsel asked petitioner questions concerning union dues as a component of the $18,045 deduction. On cross-examination, respondent's counsel challenged petitioner regarding the timing, substantiation, and validity of the $18,045 in expenses. In their respective posttrial briefs, petitioner and respondent agreed that with respect to the $18,045 deduction, petitioner is entitled to deduct the following expenses: (1) For 2005 she may deduct $276 in union dues, a fee to "SEVIS" of $100, and a $1,500 payment to Amity; and (2) for 2006 she may deduct union dues of $716 and a $750 payment to Amity. They disagreed solely with respect to the substantiation for a course that petitioner completed and paid for in 2005 in the Philippines to allow her to work for BCPS. Petitioner testified that the course "cost like 40,000 in pesos in Philippine currency", which the parties agreed had a currency exchange equivalency of $726. Respondent contended that this testimony, with nothing more, was inadequate substantiation. Petitioner did not address her entitlement to the remaining $14,977 of the $18,045 deduction.

## Discussion

### I. Income Under Article 21

Petitioner was a nonresident alien for the years at issue because of her J-1 visa status and her participation in the exchange teacher program. See sec. 7701(b). In particular,

section 7701(b)(1)(B) provides that a nonresident alien is a person who is not a citizen or resident of the United States within the meaning of section 7701(b)(1)(A).[3] Generally, a nonresident alien individual engaged in trade or business within the United States is taxed on the taxable income effectively connected with that trade or business. Sec. 871(b). The phrase "trade or business within the United States" generally includes the performance of personal services within the United States at any time within the taxable year. Sec. 864(b). Compensation paid to a nonresident alien in exchange for the performance of services in the United States constitutes income that is effectively connected with the conduct of trade or business in the United States. Sec. 1.864-4(c)(6)(ii), Income Tax Regs. Consequently, petitioner's wages would ordinarily be included in gross income under the Code. Section 894(a), however, provides that the provisions of the Code will be applied to any taxpayer with due regard to any treaty obligations of the United States that apply to the taxpayer. Therefore, the treatment of petitioner's wages might be altered by applicable treaty provisions. See id.

_____

[3]As a teacher, petitioner is considered an exempt individual and, therefore, not treated as present for purposes of the substantial presence test. See sec. 7701(b)(1)(A)(ii), (3)(D)(i), (5)(A)(ii).

The United States is a party to an income tax convention with the Republic of the Philippines.  The convention provides an exemption from U.S. income taxation on income earned by Filipino teachers teaching in the United States if the requirements of the convention are satisfied.  Article 21 states:

<u>Article 21</u>
TEACHERS

(1) Where a resident of one of the Contracting States is invited by the Government of the other Contracting State, a political subdivision or local authority thereof, or by a university or other recognized educational institution in that other Contracting State to come to that other Contracting State for a period not expected to exceed 2 years for the purpose of teaching or engaging in research, or both, at a university or other recognized educational institution and such resident comes to that other Contracting State primarily for such purpose, his income from personal services for teaching or research at such university or educational institution shall be exempt from tax by that other Contracting State for a period not exceeding 2 years from the date of his arrival in that other Contracting State.

To qualify for the exemption under article 21, a taxpayer must meet the following requirements:  (1) The taxpayer was a resident of the Philippines before coming to the United States, (2) she was invited by the Government or a recognized educational institution within the United States, (3) she was invited for a period not expected to exceed 2 years, (4) the purpose of the invitation was for her to teach or engage in research at the recognized educational institution, and (5) she did in fact come to the United States primarily to carry out the purpose of the

invitation.  The taxpayer must meet all of the requirements to qualify for the income exemption.

The only requirement in dispute is whether petitioner's invitation to teach in the United States was "for a period not expected to exceed 2 years".  The text of article 21 does not specifically state whose expectation controls the length of the invitation to teach for a period not to exceed 2 years. Petitioner argues that her expectation as the invitee is the only expectation that matters.  Respondent counters that either the expectation of the invitor, BCPS, should be decisive, or that the Court should weigh the expectations of all the parties associated with the teacher exchange program.  In the light of this ambiguity in the text of article 21, we will consider all the relevant facts and circumstances, including the expectations of all the parties.  Santos v. Commissioner, 135 T.C. __, __ (2010) (slip op. at 17).  We will construe the language of article 21 liberally.  See N.W. Life Assurance Co. of Can. v. Commissioner, 107 T.C. 363, 378 (1996).  Then we will make an objective determination of whether petitioner was invited to the United States "for a period not expected to exceed 2 years".  See Santos v. Commissioner, supra.

A.  Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving

that the deficiency is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Furthermore, any deductions allowed are a matter of legislative grace, and the taxpayer bears the burden of proving his entitlement to them. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Under section 7491(a) the burden may shift to the Commissioner regarding factual matters affecting a taxpayer's liability for tax if the taxpayer produces credible evidence and meets other requirements of the section. In her pretrial memorandum, petitioner mentioned that she would move for a burden shift under section 7491(a), contending that she had produced credible evidence and met the other requirements of the section. At trial, petitioner did not make an oral or written motion for a burden shift.

We need not, and we explicitly do not, decide which party bears the burden of proof because as discussed above, applying Santos v. Commissioner, supra, we will decide this case on an objective consideration of all the relevant facts and circumstances.

B. Analysis

We begin our analysis with a discussion of the evidence that relates to petitioner's expectation. BCPS required all of its first year teachers to sign the standard State-issued 1-year

employment contract. The fact that the contract did not guarantee employment beyond the first year does not mean that petitioner expected to stay in the United States for only 1 year. Petitioner knew that so long as her performance was satisfactory, BCPS would retain her. We believe it likely that petitioner had sufficient confidence in her teaching skills to assume that her performance would be "satisfactory" and therefore she could expect that BCPS would employ her for the second and third years and perhaps beyond.

Supporting our belief is the fact that although petitioner initially received an unsatisfactory evaluation on December 13, 2005, she reached the satisfactory level by the end of the first school year. As a result, in May 2006 BCPS offered her another contract that provided tenure after 2 more years of satisfactory performance. In addition, on petitioner's resignation letter, her supervisor wrote that petitioner's resignation was a "big loss to BCPS".

Petitioner also testified that in her mind, the information in her 3-year J-1 visa application that Amity prepared and she signed simply established an upper time limit and did not imply a commitment to stay in the United States for 3 years. Petitioner uses the same argument with respect to the 3-year exchange teacher program. While it is true that the documents did not obligate her to remain in the United States for 3 years, we find

it particularly hard to believe that petitioner did not expect to remain in the United States for the duration of the exchange teacher program. Bolstering this conclusion are petitioner's own actions and words. She brought her family to the United States as soon as the program rules allowed, and she wrote on her resignation form dated June 13, 2008, that the reason she was resigning was that the "contract [was] completed". Her employment period coincides with the length of the 3-year teacher exchange program.

Petitioner's own words in her answers on the three IRS questionnaires also weigh against her. In response, petitioner testified and the record indicates that she called the IRS for help in answering the questions pertaining to her expected length of stay in the United States. Even assuming the accuracy of petitioner's testimony that the IRS told her to complete the forms as of the date of her telephone call, her answers still show clearly that her initial expectation was to remain in the United States for the entire length of the 3-year teacher exchange program. Furthermore, petitioner introduced no evidence that she expressed to any of the parties involved that she expected to remain in the United States for 2 years or less. Similarly, petitioner did not testify that she expected to remain in the United States for 2 years or less.

We also find it highly significant that despite her initial difficulties with the high school students and her initial unsatisfactory evaluation, petitioner greatly improved her performance, received a satisfactory rating, and continued teaching for BCPS for the entire 3-year program. Thus, petitioner's actions indicate a strong commitment to staying in the United States for 3 years despite the difficulties.

The fact that petitioner obtained a leave of absence is simply not a decisive factor. Petitioner testified that the leave of absence is significant evidence in her favor because Tarlac's rules limited leaves of absence to 2 years. Without further support, however, the letter in the record from Tarlac, which states that petitioner's leave was "for the duration of the program", bolsters that evidence against her. Petitioner's request for a leave of absence was a good backup strategy in the event she decided to return to the Philippines, but it does not indicate that she expected to stay in the United States for 2 years or less.

In addition, we cannot ignore the financial incentive of remaining in the United States for as long as possible. Petitioner and her family incurred significant expenses for her to participate in the exchange teacher program. These expenditures are not insignificant in comparison to her earnings in the Philippines. Moreover, her earnings immediately grew more

than sixteenfold from $3,272 to $54,449 when she moved from the Philippines to the United States. Although petitioner testified her cost of living was lower in the Philippines, the increase in salary is too large to ignore.

From the perspective of BCPS, the school system absolutely expected that the Filipino teachers would remain for the entire 3-year exchange teacher program. Dr. Peccia testified that his Department expected the Filipino teachers to remain within the school system for exactly the length of the visa, 3 years. He stated "we had no expectations beyond 3 years and no expectations of less than 3 years." Dr. Peccia explained that "it wouldn't have been worth the investment" including "the cost of the [airline] ticket[s], the cost of all the time people were away". He added that BCPS helped the Filipino teachers with finding housing and with obtaining Social Security cards to ease their physical and psychological transition so that the teachers could focus on teaching. Dr. Peccia noted that only 1 or 2 of the 20 Filipino teachers did not complete the 3-year term. In other words, 90 to 95 percent of the teachers remained in the United States for the full 3 years.

Corroborating this evidence is the testimony of Ms. Hermann, who stated that BCPS, similar to the other school systems that hired foreign teachers through the exchange teacher program, expected the teachers to stay for the entire 3-year program. She

added that it had been Amity's experience that only a small percentage of Filipino teachers returned to the Philippines before completing the 3-year teacher exchange program and most participants decided to remain in the United States beyond the 3 years. As of the date of trial, petitioner remained in the United States teaching in Maryland. The testimony of these two witnesses is plausible, reliable, and persuasive.

In conclusion, after an objective examination of all of the relevant facts and circumstances, we find that petitioner and BCPS expected petitioner to stay in the United States for at least 3 years, which is greater than the "not expected to exceed 2 years" requirement of article 21. Therefore, petitioner's income for June 2005 to June 2007, the first 2 years she was in the United States, is not exempt from Federal income tax under article 21.

## II. Disallowed Itemized Deductions

After concessions, the parties agree that the only deduction remaining at issue is $726 for 2005 for a course that petitioner completed and paid for in 2005 in the Philippines to prepare her for teaching at BCPS. Petitioner incorrectly claimed the deduction in 2006 instead of 2005. Although respondent's notice of deficiency did not disallow this deduction, and respondent did not affirmatively raise the issue in his answer, we find that

petitioner gave her implied consent to try the issue.  See Rule 41(b); <u>Nicholson v. Commissioner</u>, T.C. Memo. 1993-427.

Section 162(a) allows a deduction for ordinary and necessary business expenses paid or incurred during the taxable year in carrying on any trade or business.  The performance of services as an employee is considered a trade or business for section 162 purposes.  <u>Primuth v. Commissioner</u>, 54 T.C. 374, 377 (1970).  For an expense to be necessary, it must be "appropriate and helpful" to the taxpayer's business.  <u>Welch v. Helvering</u>, 290 U.S. at 113-114.  An expense will be considered ordinary if it is a common or frequent occurrence in the type of business in which the taxpayer is involved.  <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940).  Taxpayers must maintain records sufficient to substantiate any deduction they claim.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Petitioner testified credibly that BCPS required her to complete the course or BCPS would not have allowed her to begin teaching at its schools.  This type of expenditure is an ordinary and necessary expenditure for an exchange teacher to incur.

Petitioner also testified convincingly that she spent $726 for the course.  Petitioner, however, was unable to substantiate her expenditure.  If a taxpayer establishes that an expense is deductible but is unable to substantiate the precise amount, the Court may estimate the amount, bearing heavily against the

taxpayer whose inexactitude is of her own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930) (the Cohan rule). The taxpayer must present sufficient evidence for the Court to form an estimate because without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

An expenditure of $726 seems reasonable for completing a course of study. Nonetheless, the lack of substantiation and the inexactitude are of petitioner's own making. Therefore, to avoid unguided largesse, we hold that under the Cohan rule petitioner is entitled to deduct $363 for the course in 2005, which is one-half of the amount that she claimed.

After reading the stipulation of facts, we conclude that both parties understood that the entire $18,045 deduction for 2006 was still at issue. See Rule 41(b); Nicholson v. Commissioner, supra. With regard to the remaining $14,977 of the $18,045 in expenses as described supra page 13 which respondent did not concede, petitioner did not testify or offer other evidence to support her entitlement to any deduction. Therefore, petitioner has abandoned the issue. See Rule 149(b).

III. Accuracy-Related Penalty

Taxpayers may be liable for a 20-percent penalty on the portion of an underpayment of tax attributable to negligence,

disregard of rules or regulations, or a substantial understatement of income tax.  Sec. 6662(a) and (b)(1) and (2).

The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Code, and the term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances.  See Allen v. Commissioner, 92 T.C. 1, 12 (1989), affd. 925 F.2d 348, 353 (9th Cir. 1991); Neely v. Commissioner, 85 T.C. 934, 947 (1985).  Negligence includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.  An "understatement of income tax" is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).

The section 6662 accuracy-related penalty does not apply where the taxpayer shows that he or she acted in good faith and with reasonable cause.  Sec. 6664(c)(1).  The determination of whether a taxpayer acted in good faith and with reasonable cause depends on the facts and circumstances of each case and includes the knowledge and experience of the taxpayer and the reliance on the advice of a professional, such as an accountant.  Sec. 1.6664-4(b)(1), Income Tax Regs.  For a taxpayer to rely

reasonably upon advice of a tax adviser, the taxpayer must, at a minimum, prove by a preponderance of the evidence that:  (1) The adviser was a competent professional with sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002).  Most important in this determination is the extent of the taxpayer's effort to determine the proper tax liability.  Id.

The Commissioner has the burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662.  To satisfy that burden, the Commissioner must produce sufficient evidence showing that it is appropriate to impose the penalty.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Respondent has satisfied his burden by producing evidence that petitioner reported no income for 2005 and 2006, failed to substantiate claimed deductions, and had substantial understatement of income tax for 2006.

Nonetheless, petitioner sought the advice of a return preparer for her 2005 and 2006 Forms 1040NR.  Petitioner stated that her preparer was an enrolled agent in the United States. Respondent did not dispute the competency of the preparer.  The preparer counseled petitioner that her income was exempt from

taxation in the United States under article 21.  Petitioner, having no formal training in taxation and being new to the U.S. tax system, reasonably relied upon the advice of a competent tax return preparer and acted in good faith.  Therefore, we do not sustain respondent's determination that the section 6662 accuracy-related penalty applies for 2005 or 2006.

IV.  <u>Conclusion</u>

The Court has considered all arguments made in reaching our decision, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.