T.C. Summary Opinion 2015-30

UNITED STATES TAX COURT

VICENTE MORATAYA AND RUTHY A. MORATAYA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24314-13S.                          Filed April 20, 2015.

Vicente Morataya and Ruthy A. Morataya, pro sese.

Miles Friedman, Kim-Khanh Nguyen, Hans F. Famularo, and Shari Wight
(student), for respondent.

SUMMARY OPINION

GUY, Special Trial Judge:  This case was heard pursuant to the provisions
of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1] Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $2,722 in petitioners' Federal income tax for 2010 (year in issue). Petitioners filed a timely petition for redetermination with the Court pursuant to section 6213(a). At the time the petition was filed, petitioners resided in California.

The sole issue for decision is whether petitioners are entitled to deductions for unreimbursed employee business expenses and miscellaneous expenses reported on Schedule A, Itemized Deductions, for the year in issue.

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

I. Mr. Morataya's Background and Employment

Mr. Morataya emigrated from Guatemala to the United States in 1988. In 2010 Mr. Morataya was employed by IC Property Management (IC) as a

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code, as amended and in effect for 2010, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

maintenance supervisor. His duties included supervising and performing maintenance and repairs at approximately 50 rental properties that IC owned in Southern California.

## II. Employment Expenses

Mr. Morataya testified that in 2010 he paid various unreimbursed expenses related to his work for IC.

### A. Vehicle Expenses

#### 1. Mileage

IC sent instructions to Mr. Morataya each morning, either by facsimile transmission or email, listing the properties that he was to visit and describing the work to be performed at each property. Mr. Morataya owned a 2009 Ford Ranger pickup truck (pickup) which he used to get to and from IC's properties. Mr. Morataya testified that he used the pickup exclusively for work, he drove at least 120 miles every workday, and most days he visited multiple IC properties. He did not maintain a mileage log of any sort, and there is no record of the properties that he visited or the number of miles that he drove each day. He testified that the instructions that IC had sent to him each day were destroyed in accordance with company policy.

## 2. Vehicle Insurance and Maintenance

Mr. Morataya maintained automobile liability insurance for three vehicles in 2010, including the pickup. The record includes the first page of petitioners' automobile insurance premium notice for the one-year period beginning June 19, 2009 to 2010, which shows that petitioners paid at least $422 annually to insure the pickup. The premium notice recites that the pickup would be driven 5,000 to 6,499 miles annually. Mr. Morataya also presented receipts showing that he paid $166 for oil changes and repairs to the pickup in 2010. These records indicate that Mr. Morataya drove the vehicle approximately 22,000 miles between February and August 2010.

## 3. Reimbursement

The record includes a statement from IC that it reimbursed Mr. Morataya approximately $400 monthly for vehicle expenses. IC did not suggest that Mr. Morataya was eligible to be reimbursed for any expenses other than vehicle expenses.[2] Although Mr. Morataya suggested that the reimbursement amounts he received from IC varied from month to month, he did not offer any records to show how much he was actually reimbursed.

---

[2]Mr. Morataya testified that IC had never provided him with a written employee expense reimbursement policy.

B.  Cellular Phone Charges

In 2010 Mr. Morataya maintained a Verizon Wireless service plan for four cellular phones.  He used one phone, and his wife and two children used the other phones.  Mr. Morataya testified that he used his cellular phone approximately 80% of the time for business purposes (e.g., to stay in touch with IC personnel while he was working).

The record includes a copy of petitioners' Verizon Wireless billing statement for the period July 20 to August 19, 2010.  The statement shows that petitioners paid $173 for cellular service that month and the charges were nearly equally divided among the four phones.

C.  Work Clothes and Shoes

IC did not require Mr. Morataya to wear a uniform.  Mr. Morataya testified, however, that IC required that he wear work boots and that he found it necessary to routinely replace the soiled and damaged clothes that he wore to work.

D.  Internet Access and Phone Charges

As previously mentioned, Mr. Morataya routinely received communications from IC by facsimile transmission or email.  Although he testified that his son helped him to retrieve emails, he was unable to produce any bills or other records to substantiate the amount that he paid for Internet access charges.  The record

includes an AT&T billing statement for December 2010 which shows that petitioners were charged $26 and $7 that month for local and long-distance phone services, respectively.

### E. Work Tools and Safety Equipment

Mr. Morataya testified that he purchased tools and safety equipment that he used at work. He did not produce any bills, receipts, or other records to substantiate the amounts he paid for work tools and safety equipment.

## III. Petitioners' 2010 Tax Return

Petitioners filed a joint Federal income tax return for 2010 reporting wage income of $45,706. Petitioners attached a Schedule A to their return and claimed itemized deductions including unreimbursed employee business expenses of $22,418 and miscellaneous expenses including tax return preparation fees of $215 and hobby expenses and accounting fees of $1,364.

Petitioners reported on Form 2106, Employee Business Expenses, that Mr. Morataya drove 33,006 miles for business purposes in 2010. Electing to apply the standard mileage rate of 50 cents per mile, petitioners reported total vehicle expenses of $16,503.[3] Petitioners reported other business expenses of $5,915

_____

[3]The Commissioner generally updates the optional standard mileage rates annually. See sec. 1.274-5(j)(2), Income Tax Regs. The standard mileage rate of
(continued...)

comprising $2,691 for vehicle maintenance and insurance, $576 for cellular phone charges, $1,107 for work clothes and shoes, $720 for Internet access charges, and $821 for work tools and safety equipment.

## IV.  Tax Return Preparation

Fannie Ordonez, an employee of the tax preparation firm Tax Guy Albert, prepared petitioners' 2010 tax return.  Albert Ortiz, the owner of Tax Guy Albert, testified at trial.  He confirmed that petitioners paid tax return preparation fees to his firm in 2010.

## V.  Notice of Deficiency

Respondent issued a notice of deficiency to petitioners disallowing the deductions for employee business expenses and miscellaneous expenses outlined above.  Respondent determined that petitioners failed to establish that the expenses were paid in 2010 or that the expenses were ordinary and necessary within the meaning of section 162.

## VI.  Closing the Record

At the close of the trial the Court left the record open for 60 days to permit the parties to exchange and possibly stipulate additional records that might allow

---

[3](...continued)
50 cents per mile for 2010 is set forth in Rev. Proc. 2009-54, sec. 2.01, 2009-51 I.R.B. 930, 930.

petitioners to substantiate the deductions in dispute.  Petitioners failed to exchange any additional documents with respondent, and the record was closed.

Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[4]

Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965).  A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further

---

[4]Petitioners do not contend, and the record does not otherwise suggest, that the burden of proof should shift to respondent pursuant to sec. 7491(a).

substantiate that the expense to which the deduction relates has been paid or incurred. Sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90.

When a taxpayer establishes that he or she paid or incurred a deductible expense, but fails to establish the amount of the deduction, the Court normally may estimate the amount allowable as a deduction. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). There must be sufficient evidence in the record, however, to permit the Court to conclude that a deductible expense was paid or incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

I. Unreimbursed Employee Business Expenses

Under section 162(a), a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. A deduction normally is not allowed, however, for personal, living, or family expenses. Sec. 262(a). Whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. See Commissioner v. Heininger, 320 U.S. 467, 475 (1943).

The term "trade or business" includes performing services as an employee. Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970). An employee business expense is not ordinary and necessary, however, if the employee is entitled to

reimbursement from his or her employer.  See Podems v. Commissioner, 24 T.C. 21, 22-23 (1955); Noz v. Commissioner, T.C. Memo. 2012-272.

Section 274(d) prescribes more stringent substantiation requirements to be met before a taxpayer may deduct certain categories of expenses, including travel expenses, meals and entertainment expenditures, and expenses related to the use of listed property as defined in section 280F(d)(4)(A).  See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969).  The term "listed property" includes, inter alia, passenger automobiles.  Sec. 280F(d)(4)(A)(i).  To satisfy the requirements of section 274(d), a taxpayer generally must maintain adequate records or produce sufficient evidence corroborating his or her own statement, which, in combination, are sufficient to establish the amount, date and time, and business purpose for each expenditure for travel away from home or each expenditure or business use of listed property.  Sec. 1.274-5T(b)(2), (6), (c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46014, 46016-46017 (Nov. 6, 1985).

Section 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017-46018 (Nov. 6, 1985), provides in relevant part that "adequate records" generally consist of an account book, a diary, a log, a statement of expense, trip sheets, or a similar record made at or near the time of the expenditure or use, along with

supporting documentary evidence. Section 1.274-5(j)(2), Income Tax Regs., provides in relevant part that a taxpayer who elects the optional standard mileage rate method to compute vehicle expenses must nevertheless substantiate the amount of business use and the time and business purpose of each use. Moreover, the Court may not use the rule established in Cohan v. Commissioner, 39 F.2d at 543-544, to estimate expenses covered by section 274(d). Sanford v. Commissioner, 50 T.C. at 827; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

A. Vehicle Expenses

Respondent disallowed deductions that petitioners claimed for vehicle expenses, including mileage expenses of $16,503 and vehicle maintenance and insurance charges of $2,691. Although Mr. Morataya reported that he drove a total of 33,006 miles for business purposes in 2010, he did not maintain a contemporaneous mileage log, and he did not offer other records to corroborate his testimony that he drove at least 120 miles per day while working for IC. Likewise, petitioners did not offer any evidence to properly account for the monthly amounts that IC reimbursed Mr. Morataya for vehicle expenses. Without more detailed records, including a copy of IC's employee reimbursement policy or similar evidence, we cannot determine whether Mr. Morataya was reimbursed in whole or

in part for the vehicle expenses in dispute.  See Podems v. Commissioner, 24 T.C. at 22-23.  On this record, we sustain respondent's determination disallowing the deductions that petitioners claimed for vehicle expenses.

B. Cellular Phone Charges

Respondent disallowed a deduction of $576 that petitioners claimed for cellular phone charges.  As previously mentioned, IC did not suggest that Mr. Morataya was entitled to reimbursement for cellular phone charges.

For taxable years beginning after December 31, 2009, cellular phones are no longer included in the definition of listed property in section 280F(d)(4), which was amended by the Small Business Jobs Act of 2010, Pub. L. No. 111-240, sec. 2043(a), 124 Stat. at 2560.  As a result of this change, cellular phones are no longer subject to the strict substantiation requirements of section 274(d).

The record includes a Verizon Wireless billing statement showing that petitioners paid about $170 monthly (or a total of $2,040 in 2010) for cellular service for four phones.  Mr. Morataya used one phone, and his wife and children used the other three.  Mr. Morataya credibly testified that he used his cellular phone approximately 80% of the time for business purposes.  On this record, we

hold that petitioners are entitled to a deduction of $408 for cellular phone charges (before the application of the 2% floor prescribed in section 67(a)).[5]

C. Work Clothes and Shoes

Respondent disallowed a $1,107 deduction that petitioners claimed for work clothes and shoes. Mr. Morataya testified that he frequently replaced the clothes that he wore to work for IC and that he was obliged to wear work boots at IC's properties.

The cost of clothing that is "required or essential in an employment, and which * * * [is] not suitable for general or personal wear and [is] not so worn" is a deductible expense. Yeomans v. Commissioner, 30 T.C. 757, 767 (1958); see Wasik v. Commissioner, T.C. Memo. 2007-148. The cost of heavy duty work clothing normally is not a deductible expense, see Donnelly v. Commissioner, 262 F.2d 411, 412-413 (2d Cir. 1959), aff'g 28 T.C. 1278 (1957), and the cost of work clothing adaptable to general wear is not deductible even if the taxpayer's work leaves the clothing soiled with grease, mud, and plaster, see Drill v. Commissioner, 8 T.C. 902 (1947).

---

[5]The deduction of $408 represents 80% of $510 (the latter amount representing one-quarter of the approximately $2,040 that petitioners paid for cellular phone service in 2010).

IC did not require Mr. Morataya to wear a uniform, and he failed to show that the clothes and work boots that he wore to work were not also suitable for general or personal wear. Consequently, we sustain respondent's determination that petitioners are not entitled to a deduction for these items.

D. Internet Access and Phone Charges

Although petitioners claimed a deduction of $720 for Internet access charges, Mr. Morataya failed to produce any bills, canceled checks, or similar records substantiating Internet access charges. He did, however, present an AT&T billing statement showing that petitioners were charged $26 and $7 that month for local and long-distance phone services, respectively.

Section 262(b) provides that, in the case of an individual, any charge for basic local telephone service with respect to the first telephone line provided to any residence shall be treated as a personal expense. Although Mr. Morataya testified that he frequently used the telephone line to receive facsimile transmissions from IC, he did not offer any testimony that IC's facsimile transmissions resulted in long-distance telephone charges. On this record, we conclude that any telephone charges related to his work for IC were attributable to basic local service. It follows that petitioners are not entitled to a deduction for Internet access or telephone charges.

E.  Work Tools and Safety Equipment

Petitioners deducted $561 for work tools and $260 for safety equipment (i.e., gloves and waist belts).  Mr. Morataya failed to produce receipts, canceled checks, or similar records substantiating these expenses.  We sustain respondent's determination disallowing the deductions petitioners claimed for work tools and safety equipment.

II.  Other Miscellaneous Expenses

A.  Tax Return Preparation Fees

Petitioners deducted $215 for tax preparation fees.  Albert Ortiz, the owner of Tax Guy Albert, testified at trial that petitioners paid $215 to his firm for tax return preparation services in 2010.  On this record, we conclude that petitioners are entitled to a $215 deduction for tax preparation fees (before the application of the 2% floor prescribed in section 67(a)).

B.  Hobby Expenses and Accounting Fees

Respondent disallowed a $1,364 deduction that petitioners claimed for hobby expenses and accounting fees.  Mr. Morataya failed to offer any evidence substantiating hobby expenses and accounting fees.  Respondent's determination disallowing a deduction for these items is sustained.

To reflect the foregoing,

Decision will be entered

under Rule 155.